[845 NE2d 1225, 812 NYS2d 395]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALVARO CARVAJAL, Appellant.

Argued October 19, 2005; decided November 22, 2005

**POINTS OF COUNSEL**

*Paul J. Angioletti,* Staten Island, for appellant. I. New York lacked territorial jurisdiction for the three possession counts where both defendant and the drugs were located in California. Defense counsel was ineffective in waiving this issue. The issue of territorial jurisdiction is nonwaivable and should have been submitted to the jury. (*People v McLaughlin,* 80 NY2d 466; *People v Kassebaum,* 95 NY2d 611, 532 US 1069; *People v Ribowsky,* 77 NY2d 284; *People v Moore,* 46 NY2d 1; *Mack v People,* 82 NY 235; *Matter of Murphy v Extraordinary Special & Trial Term of Supreme Ct.,* 294 NY 440; *People v Goldswer,* 39 NY2d 656; *People v R.,* 160 Misc 2d 142; *People v Farini,* 239 NY 411; *People v Fea,* 47 NY2d 70.) II. Defendant's counsel was ineffective where the record reflects an utter lack of preparation in a complex case involving hundreds of hours of wiretapped conversations. (*People v Henry,* 95 NY2d 563; *People v Benevento,* 91 NY2d 708; *Strickland v Washington,* 466 US 668; *People v Gil,* 285 AD2d 7; *Berger v New York,* 388 US 41; *People v Floyd,* 41 NY2d 245; *People v Greco,* 187 AD2d 151, 81 NY2d 1073; *People v Rezey,* 107 AD2d 850; *United States v Mejia-Lozano,* 829 F2d 268; *United States v DeVelasquez,* 28 F3d 2, 515 US 1064.)

*Robert M. Morgenthau, District Attorney,* New York City (*Patricia Curran* and *Mark Dwyer* of counsel), for respondent. I. Defendant was properly tried in New York for the first degree

drug possession crimes. (*People v Giordano,* 87 NY2d 441; *People v Kassebaum,* 95 NY2d 611; *People v McLaughlin,* 80 NY2d 466; *People v Guidice,* 83 NY2d 630; *People v Manini,* 79 NY2d 561; *United States v Burroughs,* 830 F2d 1574, 485 US 969; *People v Cullen,* 50 NY2d 168; *People v Taylor,* 304 AD2d 434; *People v Muniz,* 215 AD2d 881; *People v Joseph,* 8 AD3d 61.) II. Defendant's trial counsel afforded him effective assistance. (*People v Karabinas,* 63 NY2d 871; *People v Rivera,* 71 NY2d 705; *People v Jones,* 55 NY2d 771; *People v Carver,* 234 AD2d 164; *People v Shaw,* 221 AD2d 265; *People v Silva,* 220 AD2d 230; *People v Caban,* 5 NY3d 143; *People v Henry,* 95 NY2d 563; *People v Benevento,* 91 NY2d 708; *People v Baldi,* 54 NY2d 137.)

**OPINION OF THE COURT**

Chief Judge KAYE.

In this prosecution for first degree criminal possession of a controlled substance and conspiracy, we are called upon to determine whether New York rightly exercised territorial jurisdiction over the possession offenses, when the defendant resided, and the cocaine was seized, in California. We conclude that, pursuant to the authority granted by CPL 20.20 (1) (c), New York was vested with jurisdiction to prosecute.

Background

At trial, the People presented evidence that in 1993, the New York State Drug Enforcement Task Force began investigating a narcotics trafficking ring centered at a Queens County garage known as W & G Auto Repair, which was operated by Freddy Lasso. Surveillance of W & G and wiretaps revealed evidence of an interstate scheme by which cocaine was secreted in hidden automobile compartments and driven from San Francisco to New York. Freddy Lasso headed the New York operation along with Louis Grueso Camacho (Grueso); defendant was their West Coast partner. A man known as Chicanero oversaw transportation of the drugs cross-country. Defendant and his cohorts employed other individuals to drive, store and protect the drugs and equipment.

Between April 13 and April 17, 1994, the task force intercepted a series of telephone calls defendant had with Grueso, Freddy Lasso and Chicanero about a planned shipment of cocaine from San Francisco to Queens County. The drugs were slow in arriving due to an overheated car. Defendant reported to Freddy Lasso that "it would go five miles and then it would

stop." Defendant planned to send a backup car to meet the failing vehicle, so that, as Freddy Lasso told Grueso, the drugs could "finally get here." Task force members tried to intercept the delivery in Queens on April 17, but arrived too late at the exchange location, believed to be a McDonald's at 204th Street and Northern Boulevard. That night, Freddy Lasso called defendant and told him that the transport of at least 65 kilograms of cocaine was a success.

Based on a series of calls intercepted between May 13 and May 19, 1994, the task force learned of plans to use three cars (white, blue and green) to transport cocaine from San Francisco to New York. Defendant was in New York City for four days, from May 13 to May 16, meeting with his cohorts.[1] During his stay, he made telephone calls to his California subordinates. He gave detailed instructions to them on preparing the cocaine for shipment to New York City via automobile, and planned to pay the travel expenses of a driver.

After returning to California, defendant continued his preparations. On May 17, he told Freddy Lasso that he would put 21 kilograms of cocaine in the white car for Hans Vargas (a Chicanero employee) to pick up. Defendant later reassured Freddy Lasso that he would "dress up the girls" (prepare the cocaine) for delivery to New York. Freddy Lasso told him to "fill up the space" in the blue and green cars.

On May 19, task force members stopped Vargas just outside the San Francisco airport; after a brief search of his white Mazda, no drugs were located and Vargas was sent on his way. Vargas parked in the airport garage and entered the terminal, and upon his return to the car, the task force team intervened, finding 21 kilograms of cocaine in hidden compartments in the panels of the car's rear doors. Later that evening, task force members stopped a blue Volvo which had been left at a suburban San Francisco shopping center by defendant's employee Victor Hugo. At the time of the stop, Chicanero employee Hector Rivas was driving the Volvo. Thirty kilograms of cocaine were found in a hidden trap behind the dashboard. Following

---

1. On May 13, a call received at W & G confirmed that defendant had just arrived in New York from San Francisco. During the call, Freddy Lasso informed a worker in the organization of defendant's hotel room and telephone number. On May 16, task force members followed defendant, Louis Grueso and a third individual from W & G to the United Airlines Terminal at JFK. Two agents purchased tickets and took the same flight as defendant to San Francisco.

these setbacks, defendant and Freddy Lasso spoke by telephone and made plans to move their drug inventory to a new location.

The task force learned that the cohorts stored a large amount of cocaine in a "stash house" in Daly City, outside San Francisco. On the night of June 15, 1994, police recovered 23 kilograms of cocaine and more than $433,000 from the stash house. Apparently, defendant and an underling entered the garage at the stash house while task force agents were inside; defendant later told Freddy Lasso that he saw some strange people in the house and left. Defendant said that he doubted whether the people he had seen in the house were police. Grueso angrily told defendant that he had 48 hours to get him "that material." Freddy Lasso told defendant to "load up" a car with drugs bound for New York as soon as possible.

Defendant was arrested in California in September 1994; Freddy Lasso and other conspirators were also arrested. On October 15, 1994, defendant, Freddy Lasso, Grueso, Lasso's brothers Raul and Nelson Lasso, and others were charged in a special narcotics indictment with second degree conspiracy.[2] Defendant, Freddy Lasso and Grueso were also charged, acting in concert, with three counts of first degree criminal possession of a controlled substance (Penal Law § 220.21 [1]) for the separate quantities of drugs seized in California.[3]

At a joint trial of defendant, Freddy Lasso, Grueso and Raul Lasso, the court addressed the issue of territorial jurisdiction:

> "I have had further time to reread People v. McL[a]ughlin, which I believe is 80 NY 2d. The way I read that Court [of] Appeals case, the question of the territorial jurisdiction has to be raised or as the Court says, 'put in issue in front of the jury.'
>
> "My interpretation would be that the same way you put in issue justification, voluntariness of [a] statement, something has to be raised about it and then I give it.
>
> "So far in this case no one has raised anything about territorial jurisdiction . . .

---

2. Freddy Lasso and Raul Lasso were additionally charged with first degree criminal sale of a controlled substance and first degree criminal possession of a controlled substance for a sale of three kilograms of cocaine to another individual on June 6, 1994.

3. Prior to trial, counsel for Freddy Lasso moved to dismiss for lack of territorial jurisdiction. That motion, which defendant did not join, was denied.

"So what I'm saying to you, if you disagree with my interpretation of 80 NY 2d, People v. McL[a]ughlin, let me know, but if you take that in combination with all the other law and charge, it has to be raised as a jury question, the same way voluntariness can be raised if there were questions about it at the time and then I charge the jury.

"I guess I'm talking to myself. So I'll end the conversation with myself and I think that [it] hasn't been raised yet, unless the [d]efense either are putting on a case, brings something out in cross-examination, I don't believe I need to charge it. If anyone wants to address that—

"[Counsel for defendant]: Judge, we still have [a police witness] on cross-examination. It can be brought out during cross-examination.

"THE COURT: You hear what I just said? Unless it's raised as an issue. I have the case right here. I'm sure you all read it. They said if it's disputed, if it's put in issue at trial. I think all [d]efense counsel knows where they're going.

"Is anyone putting it in issue, that's my question."

After further discussion, counsel for Freddy Lasso stated that jurisdiction "will be put in" issue, and asked for time to read the *McLaughlin* decision.

Subsequently, the court proposed to submit six interrogatories to the jury, two for each possession count, under two territorial jurisdiction sections: CPL 20.20 (1) (a) (jurisdiction established when conduct is committed in New York sufficient to establish an element of the offense) and CPL 20.20 (1) (c) (jurisdiction established when conduct is committed in New York sufficient to establish a conspiracy to commit the offense). Counsel for defendant stated "We never asked for it. [Counsel for Grueso] and myself never asked for it." Counsel for Grueso then stated:

"I will speak on behalf of all the defendants. We had a lengthy discussion this morning after your Honor gave us copies of the proposed charge with the interrogatories. After reviewing that with counsel and the defendants, the defendants have agreed to withdraw the request for territorial jurisdiction."

The trial court, as requested by defendants, did not submit the interrogatories. Rather, the court instructed that to convict on drug possession, the jury had to find that the defendants committed the elements of that crime in the County of Queens, in New York City, and in the State of California. The court further advised the jury, without objection by defense counsel, that

"[y]ou should be aware that I have referred to many of the alleged overt acts as telephone conversations. The law in this regard says under Article 20.60 of the Criminal Procedure Law, '[a]n oral or written statement made by a person in one jurisdiction to a person in . . . another jurisdiction by means of telecommunications is deemed to be made in each such jurisdiction.' "

Defendant was convicted of three counts of first degree criminal possession of a controlled substance, as well as one count of conspiracy in the second degree, and was sentenced as a second felony offender to an aggregate term of 35 years to life. The Appellate Division affirmed defendant's convictions, concluding that territorial jurisdiction over the possessory offenses had been established under CPL 20.20 (1) (a) in that defendant's telephone conversations with his New York-based accomplices were deemed New York conduct sufficient to establish an element of the offense. Defendant's cohorts in the conspiracy were also convicted as charged (*see People v Lasso-Reina*, 305 AD2d 121 [1st Dept 2003], *lv denied* 100 NY2d 595 [2003]; *People v Camacho*, 262 AD2d 238 [1st Dept 1999], *lv denied* 93 NY2d 1015 [1999]; *People v Lasso*, 268 AD2d 313 [1st Dept 2000]).

As defendant was charged with conspiracy, not only to possess drugs but also to transport them to New York, we conclude that the most logical basis for New York's assertion of jurisdiction over defendant is through that very conspiracy—occurring in this state—to commit the possessory offenses (*see* CPL 20.20 [1] [c]). Without reaching the alternative basis for jurisdiction under CPL 20.20 (1) (a), we affirm based on CPL 20.20 (1) (c).

## Discussion

This case comes to us in a somewhat unusual posture, in that at trial, defendant never moved for a trial order of dismissal (CPL 290.10 [1]) on the ground that the People failed to prove jurisdiction, and rejected the court's offer to place the interrogatories before the jury. Rather, defendant relinquished his opportunity to hold the People to their burden of proof, and did

not preserve his current contention that the jury should have decided whether the People proved jurisdiction beyond a reasonable doubt. That claim is not reviewable in this Court (*see e.g. People v Gray*, 86 NY2d 10, 22 [1995]).

*People v Greenberg* (89 NY2d 553 [1997]) does not mandate a different conclusion. In *Greenberg*, a case implicating venue concerns, the People contended that the defendant waived his claim of defect by failing to object pretrial to the county of prosecution. We disagreed, holding that, because the defendant was tried without a jury, it was sufficient that defense counsel alerted the court at the close of the People's case to the People's alleged failure to establish venue. We also reiterated the distinction between venue and territorial jurisdiction, observing that "venue issues—which relate only to the proper place of trial, *rather than to the power of the court to hear and determine the case*—are waivable. Failure to request a jury charge on venue thus amounts to waiver" (*Greenberg*, 89 NY2d at 556 [citation omitted and emphasis added]). Implicit in *Greenberg* was our conclusion that, although a defendant's failure to request a jury charge on territorial jurisdiction amounts to waiver of a jury charge claim, that failure does not amount to waiver of the fundamental question whether—as a matter of law—this State has the power to hear the case.

Indeed, territorial jurisdiction implicates the State's inherent authority to prosecute and punish a suspect for alleged criminal conduct, and thus we address the law question whether, in the circumstances presented here, New York was vested with that power in the first instance (*see People v McLaughlin*, 80 NY2d 466, 470-472 [1992]).

At common law, it was settled that jurisdiction over a felony offense was vested only in the state where the felony was completed (*see People v Kassebaum*, 95 NY2d 611, 617 [2001], citing *People v Werblow*, 241 NY 55, 60 [1925]). While long accepting this principle as a jurisprudential underpinning, we have nevertheless recognized its substitution by statutes that have broadened the scope of territorial jurisdiction (*see Kassebaum*, 95 NY2d at 617, quoting *People v Stokes*, 88 NY2d 618, 624 [1996]). Our statute, CPL 20.20, has codified the general principle that, for New York to exercise criminal jurisdiction, some alleged conduct or a consequence of that conduct must have occurred in the state. The People at trial claimed jurisdiction both under CPL 20.20 (1) (a) and CPL 20.20 (1) (c).

■ Without reaching CPL 20.20 (1) (a), we conclude that territorial jurisdiction over the possessory offenses in this case was established under CPL 20.20 (1) (c), which provides that

> "a person may be convicted in the criminal courts of this state of an offense defined by the laws of this state, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:

> "1. Conduct occurred within this state sufficient to establish: . . .

> "(c) A conspiracy or criminal solicitation to commit such offense, or otherwise to establish the complicity of at least one of the persons liable therefor; provided that the jurisdiction accorded by this paragraph extends only to conviction of those persons whose conspiratorial or other conduct of complicity occurred within this state" (CPL 20.20 [1] [c]).

Plainly, jurisdiction over an offense exists based on a conspiracy occurring in New York to commit that offense. Further, jurisdiction exists only for those defendants whose criminal acts in furtherance of the conspiracy occurred in New York. Here, the question is whether there was evidence of defendant's conduct in New York sufficient to establish his conspiracy to commit first degree criminal possession of a controlled substance.[4] We conclude that there was.

Defendant was charged with and convicted of second degree conspiracy, and makes no claim that New York lacked jurisdiction over that offense. Indeed, he acknowledges that the conspiracy alleged was broader than the possession counts; in his brief, he admits that the conspiracy as set forth in the indictment "charged not only the possession, but the 'transportation

---

4. "A person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct" (Penal Law § 105.15). At the time of defendant's crimes, a person was guilty of criminal possession of a controlled substance in the first degree when he knowingly and unlawfully possessed one or more preparations, compounds, mixtures or substances of an aggregate weight of four ounces or more containing a narcotic drug (former Penal Law § 220.21 [1]). Only jurisdiction is disputed by defendant, not sufficiency of the evidence.

of multiple kilograms of cocaine from the San Francisco, California area to New York City.' "[5]

With respect to possessory crimes, the Legislature has defined criminal possession in terms of dominion and control, and unlawful possession is a continuing offense (Penal Law § 10.00 [8]; *see Matter of Johnson v Morgenthau*, 69 NY2d 148, 151-152 [1987]). In this case, the jury concluded based on ample evidence, uncontested by defendant on appeal, that defendant and his cohorts exercised dominion and control over large quantities of cocaine in California on three separate occasions between mid-May and June 15, 1994 (*see generally People v Fuente*, 79 NY2d 561, 574 [1992] [observing that a defendant may constructively possess drugs by exercising dominion and control over them through his authority over the person who physically possesses them, or through his access to or control over the place where they are kept]). Prior to and during that period, defendant and his cohorts were engaged in an ongoing plot to bring that cocaine, located in California, to New York.[6]

Two facts make a clear case for jurisdiction to prosecute defendant under CPL 20.20 (1) (c): first, defendant was physically present in New York for some of the conspiratorial conduct on which jurisdiction is predicated; and second, the drugs in question were to be shipped to New York. Defendant flew to New York in May, and while in this state, he made out-of-state phone

---

**5.** Defendant posits that New York established jurisdiction over the second degree conspiracy count under CPL 20.20 (2) (d), which confers jurisdiction over a conspiracy where, *"[e]ven though none of the conduct constituting such offense may have occurred within this state*: . . . (d) The offense committed was conspiracy to commit a crime within this state and an overt act in furtherance of such conspiracy occurred within this state." (CPL 20.20 [2] [d] [emphasis added].) The dissent also appears to agree that "[t]erritorial jurisdiction over conspiracy was established. That issue is not disputed in this case" (dissenting op at 324). Notwithstanding a CPL 20.20 (2) (d) analysis, the question before us is whether, under CPL 20.20 (1) (c), there was *conduct occurring in New York* sufficient to establish a conspiracy to commit the substantive offense of first degree criminal possession of a controlled substance. If there was such New York conspiratorial conduct, then jurisdiction over the possession is established.

**6.** The sufficiency of the proof of first degree criminal possession is not before us; nor do we rely on *Fuente* for the proposition that defendant constructively possessed drugs *in New York*. Constructive possession occurring within New York's physical boundaries is simply not required to assert jurisdiction under CPL 20.20 (1) (c).

calls to underlings, met with New York cohorts and conspired to transport cocaine here.[7]

Defendant contends that his telephone calls from California to New York counterparts amount merely to conduct having some "nexus" to this state, not conduct occurring within this state. However, under CPL 20.60 (1), defendant's telephonic statements to his accomplices here are deemed to be New York conduct (see People v Giordano, 87 NY2d 441, 449 [1995] ["the Criminal Procedure Law provides that oral statements made over the telephone are deemed to be statements made in both the sending and receiving" jurisdictions pursuant to CPL 20.60 (1)]). In those calls, he spoke with Freddy Lasso and others concerning their joint efforts to move drugs from California to New York.

Defendant had conspiratorial telephone conversations with Freddy Lasso concerning the 21 kilograms of cocaine recovered on May 19 from the white Mazda. They discussed the fact that these drugs had been removed from a stash house, that the white car was ready for Hans Vargas to pick up, that police had searched Vargas's car and that Freddy Lasso directed Vargas to return to the car from the airport terminal. Defendant and Freddy Lasso also engaged in several telephone conversations regarding the 30 kilograms of cocaine seized from the blue Volvo on May 19. Defendant told Lasso that these drugs had been removed from a stash house and that he was waiting for Victor Hugo to park the car at the shopping center and leave the keys so that the car could be picked up. Additionally, defendant arrived at the Daly City stash house on June 15, while agents were executing a search warrant and recovering 23 kilograms of cocaine and more than $433,000. The next day, defendant had several telephone conversations with Freddy Lasso and Grueso about the details of the police raid, defendant's narrow escape from the house, and the loss of the cocaine and cash.

Thus, while he was present in this state, both physically and by telephone defendant conspired with his accomplices and engaged in overt acts in furtherance of their possession of significant quantities of cocaine and their plan to transport the cocaine to New York.

---

7. This would be a harder case if neither physical presence nor plans to bring the drugs to this state were evident and the only connection between defendant's criminal conduct and New York consisted of telephone calls in which he spoke from California to his New York accomplices and coconspirators. That case is not before us and we express no opinion on it.

Relying on *People v Muro* (223 AD2d 563, 564 [2d Dept 1996]), defendant further maintains that New York's jurisdiction over the conspiracy count cannot be "bootstrapped" over the possessory offenses because jurisdiction must be independently established for each of the three drug possession counts. *Muro* does not support defendant's claim. There, the People conceded that the court's charge to the jury incorrectly instructed that a finding of geographic jurisdiction on one count effectively vested Nassau County with jurisdiction over all counts charged in the indictment. In this case, however, compelling evidence of a conspiracy tied defendant to each of the three possession counts.

A few responses to the dissent are in order. First, because we conclude that jurisdiction is predicated on a conspiracy in New York to possess cocaine, we need not consider whether jurisdiction might also be established under CPL 20.20 (1) (a) or any other theory (*see Kassebaum*, 95 NY2d at 621).[8] We are bound, of course, by principles of judicial restraint not to decide questions unnecessary to the disposition of the appeal.

Second, at trial, defendant never alleged any constitutional violation, federal or state, concerning his prosecution by New York (*see* dissenting op at 321-322). Defendant's references in his brief to article I, § 2 of the New York State Constitution are offered in support of his claim that "New York courts have given the jurisdictional exceptions in Criminal Procedure Law Article 20 'a restrictive interpretation and operation' " (quoting Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 20.40 [1981]). Nowhere in his brief does defendant contend that, on a constitutional ground, the Legislature lacked the power to vest jurisdiction in the manner it has chosen. The dissent's assertions that defendant's convictions violate article III, § 2 of the Federal Constitution, the Sixth Amendment and article I, § 2 of the State Constitution are premised on theories that were simply not raised by defendant at trial—or indeed in this Court.

---

8. The dissent would require that conduct establishing at least an element of the offense, or the entire offense, occur in New York (dissenting op at 327). Yet the relevant statutory provisions are set forth in the disjunctive: CPL 20.20 (1) (a) requires that an element of the offense occur in New York, but CPL 20.20 (1) (c), on which our holding is grounded, does not. Similarly, the dissent concludes that despite CPL 20.60 (1), defendant's telephone calls to New York did not establish an element of possession here (*see* dissenting op at 329). Again, the interstate calls to New York, deemed to have occurred here by statute, aid in establishing jurisdiction *over the conspiracy* to commit the possessory offense here.

Third, we perceive no "extension" of *Kassebaum* in our ruling (*see* dissenting op at 324-325). In *Kassebaum*, territorial jurisdiction over the crime of attempted criminal possession of a controlled substance was established under CPL 20.20 (1) (a)—a different subsection than that discussed here.

Finally, at bottom, our dissenting colleague maintains that our holding is correct only if the possession offense—the object of the conspiracy—is actually committed in New York (dissenting op at 330). The Legislature, however, concluded otherwise. In this coast-to-coast drug trafficking operation, defendant conspired in New York with his New York cohorts to bring cocaine to New York, thus affording a basis for the assertion of jurisdiction under our statutory scheme to prosecute him, jointly with his coconspirators, here. Defendant's contention that his trial attorney was ineffective lacks merit.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting). Because the Constitution of the United States, the Constitution of the State of New York and the laws of the State of New York do not permit a person to be found guilty of criminal possession of a controlled substance on a theory of constructive possession rather than actual possession where both the substance and the defendant are in California, I dissent.

There is no question that defendant was properly convicted of conspiracy. It also appears clear that the defendant could have been found guilty of attempted possession of a controlled substance. Defendant, however, was not found guilty of attempted possession but of constructive possession. The People's theory is that even though the controlled substances that defendant was found guilty of possessing were never in New York, one element of possession (knowledge) occurred in New York. The People argue further that the drugs were constructively possessed in New York since the drugs were bound for New York and (1) defendant, in California, had conversations with persons in New York, and (2) on one day when he was in New York, defendant had conversations in New York with persons in New York and California, thus exercising dominion and control over those persons.

### Facts

At trial, the People offered evidence that defendant, Alvaro Carvajal, was a member of a Colombian drug trafficking opera-

tion that brought cocaine from San Francisco to New York in 1993 and 1994. Defendant's conviction was the result of a multistate investigation of a drug conspiracy involving parties in San Francisco, New York and Chicago. The New York State Drug Enforcement Task Force began the investigation in 1993 and ultimately focused on a Queens garage called W & G Auto Repair, which was operated by Freddy Lasso (Lasso). Through wiretaps, it was determined that Lasso headed the New York operation with Louis Grueso Camacho (Grueso). The transportation coordinator for the drug network was known as Chicanero, an alias, who was neither arrested nor identified after the arrests of the other members of the conspiracy. Defendant resided in Daly City, California, a suburb of San Francisco.

The possession counts against defendant were for the following: (1) on May 19, 1994, a white Mazda bearing Pennsylvania license plates, driven by Hans Vargas, was stopped and searched by California Deputy Sheriff Gilbert Rodriguez and 21 kilograms of cocaine were found; (2) on May 19, 1994, Special Agent Karl Nichols of the Drug Enforcement Agency (DEA) saw Hector Rivas (Rivas) and Sylvia Jeffries get into a blue Volvo with Pennsylvania plates, a search of which later revealed 30 kilograms of cocaine; and (3) on June 15, 1994 a search of a California stash house, which defendant controlled, revealed 23 kilograms of cocaine.

Phone calls between defendant and other members of the conspiracy were frequent. Defendant, from California, had most of his conversations about the status of the drugs and their shipment with Lasso. Lasso, from New York, originated the majority of the phone calls between the two. On April 13, 1994, Lasso called defendant twice to discuss the status of a shipment of drugs being driven by Hans Vargas (Vargas), who was delayed by his overheated car. On April 14, 1994, when Lasso called the defendant to discuss arrangements, defendant mentioned that Vargas had to be paid $20,000 for his role in transporting drugs to New York, and Lasso told defendant of his plans to buy Volvos with hidden traps. On April 16, 1994, Lasso called defendant to discuss Omar Gonzalez returning from Chicago with drugs in a blue car, Vargas' payment and the possibility that Chicanero had stolen five kilograms of cocaine. On April 17, 1994, Lasso called defendant to discuss the narcotics exchange between Vargas and Gonzalez.

The cocaine that was seized and that forms the basis for the possession counts against defendant was the result of activities

occurring in May 1994. On May 17th, Lasso called defendant and told him Grueso wanted defendant to leave the white car the way it was and "fill up the space" in the blue and green cars. Lasso and defendant also discussed how many kilograms of cocaine should be put in each car. Later on May 17th, Lasso called defendant, and defendant told him he would put 21 kilograms of cocaine in the white car so Vargas could pick it up. Defendant also advised Lasso to tell Grueso he would try to send out the white, green and blue cars. On May 19th, Lasso called defendant and defendant assured him that all the narcotics had been removed from the "stash house." Later on May 19th, Lasso called defendant and defendant told him that a woman may have taken the blue Volvo and Vargas was taking the white Mazda. Defendant again assured Lasso he removed the drugs from the stash house. After Vargas was initially stopped and searched on May 19th on his way to the airport in the white Mazda and no drugs were found, Lasso called defendant who told Lasso he would pressure Chicanero to get the Mazda. Lasso overruled this suggestion and Vargas continued to drive the Mazda until it was stopped and searched again. Twenty-one kilograms of cocaine were found. Law enforcement agents seized the drugs and car; however, Vargas was let go.

Lasso called defendant on May 20th to relay that Rivas was under investigation for being in the blue Volvo and that Chicanero was on his way to Los Angeles. Defendant told Lasso about the police raid of the stash house and Lasso suggested defendant rent an apartment "outside of town" to store the drugs until a worker arrived to retrieve them. Lasso and defendant spoke three more times on May 20th with defendant blaming Victor Hugo (Hugo) for the loss of the stash house and the blue and white cars.

Defendant also made a phone call from New York. On May 14, 1994, while visiting New York to get license plates, defendant used Lasso's cellular phone to call Hugo in California to give directions to Hugo concerning his departure the following day. During the call, defendant requested that Chicanero get the keys to the blue car from Vargas and give them to Hugo. Defendant also told Chicanero that he was bringing license plates from New York and registration for the blue car with him. Defendant directed Chicanero to take the white car and also took responsibility for Vargas' traveling expenses.

Defendant also called New York from California on several occasions. On May 17, 1994, defendant called Lasso to assure him

that he had prepared and checked the kilograms of cocaine that were to be sent to New York. On May 19, 1994, defendant called Lasso in New York to question whether Hugo had parked the blue Volvo containing 30 kilograms of cocaine at the Serramonte Shopping Center. Defendant told Lasso he was parked and waiting for Vargas to arrive so that they could do a "car switch" and Vargas could take the white Mazda. On May 20th, defendant called Lasso to say Hugo informed him that Chicanero had given the Mazda to Hugo. Defendant expressed concern about the drugs being removed from the stash house and told Lasso to speak with Grueso to get Chicanero to New York. Later on May 20th, defendant and Lasso expressed suspicion about Chicanero's account of the arrests and Lasso emphasized the importance of protecting the narcotics in the green car, which Vargas was driving east so the organization could break even despite the loss of the white Mazda and the blue Volvo.

Other accomplices called Carvajal in California to discuss shipments to New York. On May 17, 1994, Grueso called defendant and discussed Vargas' aborted trip in the white car and Chicanero's preparations for Vargas to, instead, drive the blue car. Defendant told Grueso that he would send the "lady" in the green car and Vargas in the blue car. He also promised to "bathe the girls," meaning he would remove the smell of narcotics from the car.

On June 15, 1994, after conducting surveillance of a house in Daly City, Deputy Sheriff Rodriguez and DEA Task Force Field Supervisor Mark Scheffler knocked on the door, which was answered by Jose Gonzalez. A search of the house revealed a large duffel bag with 23 kilograms of cocaine and, under a bed, a knapsack with $433,070. Wiretaps revealed a conversation between Lasso and Grueso where Lasso relayed that defendant had called earlier to say he and Vargas had entered the garage to the stash house when they saw some strange people and left. Lasso told Grueso that the money in the house belonged to Tabla, another drug dealer. Defendant later told Lasso he let Gonzalez store money in the house in return for Gonzalez guarding the drugs. In another conversation, Grueso threatened defendant and told him he had 48 hours to get the drugs to New York. Defendant later spoke with Lasso and Lasso's brother about his observations of the stash house the night before. At the end of the day in another call, Lasso told defendant to "load up" a car and get the drugs to New York as soon as possible.

Defendant was arrested on September 24, 1994, in front of his house in Daly City, California. When defendant was

searched, among the items recovered were a business card for El Caney, Lasso's Queens restaurant; an El Caney Record Store business card; a W & G Auto Repair business card and three telephone books containing Chicanero's name and beeper number and Lasso's name and telephone number. A search of defendant's home found W & G Auto Repair business cards, a VISA credit card in Lasso's name and an El Caney Record Store American Express corporate credit card in Lasso's name. A search of W & G Auto Repair on October 3, 1994 found three cars with traps to conceal narcotics identical to hidden compartments in the blue Volvo seized on May 19th.

Defendant was convicted of conspiracy in the second degree and three counts of criminal possession of a controlled substance in the first degree. Defendant's sentence included 12½ to 25 years for conspiracy, to run concurrently with terms of 20 years to life on two possession counts, and a consecutive term of 15 years to life on the third possession count.

A Judge of this Court granted the defendant leave to appeal. On appeal, defendant challenges New York's exercise of territorial jurisdiction on the possession counts and argues that his counsel was ineffective. He contends that the convictions for criminal possession of a controlled substance should be reversed and the indictment as to those counts dismissed.

### Discussion

#### The Federal and State Constitutions

In this case we address whether a New York criminal court lacked territorial jurisdiction, allegedly conferred under Criminal Procedure Law § 20.20, to prosecute defendant for three counts of criminal possession of a controlled substance in the first degree where the drugs and the defendant were located in California.

To begin with, the conviction of defendant for constructive possession here violates article III, § 2 of the Federal Constitution which reads in part:

> "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; *and such Trial shall be held in the State where the said Crimes shall have been committed*; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed" (§ 2 [3] [emphasis supplied]).

The conviction also violates the Sixth Amendment to the Federal Constitution which reads in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . .*" (emphasis supplied).

In New York, the right to a jury trial guaranteed by article I, § 2 of the State Constitution encompasses the right to be tried in the county where the crime occurred (*People v Ribowsky*, 77 NY2d 284, 291-292 [1991]; *People v Moore*, 46 NY2d 1, 6-7 [1978]; *Matter of Murphy v Extraordinary Special & Trial Term of Supreme Ct.*, 294 NY 440, 458 [1945]; *Mack v People*, 82 NY 235 [1880]). To uphold this conviction is to violate that principle.

It should be clear what the dissent is saying with respect to territorial jurisdiction and preservation. Because territorial jurisdiction goes to the authority of the court to try a defendant for the particular crimes in issue, no preservation is necessary (*People v Patterson*, 39 NY2d 288, 295 [1976] ["A defendant in a criminal case cannot waive, or even consent to, error that would affect the organization of the court or the mode of proceedings proscribed by law"], citing *Cancemi v People*, 18 NY 128, 138 [1858]).

Jurisdiction Pursuant to Criminal Procedure Law § 20.20 (1) (a)

In the case at bar, the People claim the State has territorial jurisdiction pursuant to CPL 20.20 (1) (a) in that an element of the possession crime, that is knowledge, occurred in New York. On the jurisdictional issue, the trial court stated:

> "I've been with this case for six weeks. The issues have been raised. It is not a secret anymore. We had a conversation, all counsel were present, we agreed if jurisdiction was raised it was not venue, which is geographical, it was territorial and the only counts it applied to were two, three and four. . . .

> "The People's allegations here are that—they're relying on 20.20 1-A and, of course, [20.60 (1)], that the element of the crime occurred in New York, that is Freddy Lasso, Alvaro Carvajal and Louis Grueso constructively possessed the narcotics seized in California. That's as simple as I can get."

In addition, the People contend that the defendant either waived or abandoned any argument as to jurisdiction. The defendant's argument here is that there was no jurisdiction in New York of the offense of criminal possession of a controlled substance.

Criminal Procedure Law § 20.20 (1) (a) states:

> "§ 20.20 Geographical jurisdiction of offenses; jurisdiction of state
>
> "Except as otherwise provided in this section and section 20.30, a person may be convicted in the criminal courts of this state of an offense defined by the laws of this state, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:
>
> "1. Conduct occurred within this state sufficient to establish:
>
> "(a) An element of such offense . . . ."

The elements of criminal possession of a controlled substance are the knowing and unlawful possession of four or more ounces of a controlled substance within the State of New York. Neither the defendant nor the drugs were present in New York at the time of defendant's apprehension. As a result of the lack of obvious jurisdiction, New York has encroached upon California's jurisdiction.

"The general rule in New York is that, for the State to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the State" (*see People v McLaughlin*, 80 NY2d 466, 471 [1992] [citations omitted]).

> "Jurisdiction in this sense is a question of the sovereign's power to prosecute and punish an accused for conduct which is allegedly criminal. Because the State only has power to enact and enforce criminal laws within its territorial borders, there can be no criminal offense unless it has territorial jurisdiction" (*see id.* [citations omitted]).

Ordinarily, jurisdiction is not an issue, but when it is, New York State must establish that it had territorial jurisdiction beyond a reasonable doubt (*People v McLaughlin*, 80 NY2d at 469, 471-472).

The Appellate Division ruled and the People contend here that defendant waived the issue of jurisdiction. Jurisdiction, however, can never be properly waived. "[T]erritorial jurisdiction . . . goes to the very essence of the State's power to prosecute and . . . may never be waived . . ." (*id.* at 471). Either a court has the authority to hear a case or it does not.

The Appellate Division concluded that the "evidence amply supports the People's claim that an element of the crime occurred in this state" (14 AD3d 165, 170 [2004]). The Appellate Division then goes into a discussion of constructive possession without saying what the element is. "Jurisdiction concerns the power of the State to bring the criminal proceeding, not the factual elements of the crime which must be proven for a conviction" (*People v McLaughlin*, 80 NY2d at 472).

The majority states, "Here, the question is whether there was evidence of defendant's conduct in New York sufficient to establish his conspiracy to commit first degree criminal possession of a controlled substance." (Majority op at 313.) The majority concludes that there was conduct in New York that gave New York jurisdiction over the possession crimes.

Territorial jurisdiction over conspiracy was established. That issue is not disputed in this case. Territorial jurisdiction was not established over criminal possession of a controlled substance when the substance never reached New York or the hands of the defendant in New York or a person or area in New York that defendant exercised dominion or control over. Unlike *People v Stokes,* where the conviction for felony murder was upheld even though the underlying offense was committed in another state, in this case, we have two separate crimes, conspiracy and criminal possession of a controlled substance, in which New York must establish territorial jurisdiction (*see* 88 NY2d 618, 623-625 [1996]).

*People v Kassebaum* and the Current Possession Counts

While the majority declines to discuss the applicability of CPL 20.20 (1) (a) to this case and concludes that *People v Kassebaum* (95 NY2d 611 [2001]) does not apply because it discusses "CPL 20.20 (1) (a)—a different subsection than that discussed here" (majority op at 317), that section and jurisdiction of the possession offenses was applied by the trial court and is a major contention of the People on this appeal. The fact that the majority does not discuss CPL 20.20 (1) (a) in no way removes it from this case.

To uphold a conviction for criminal possession of a controlled substance based upon constructive possession of drugs found in California where the defendant was also located in California would be an extension of this Court's decision in *People v Kassebaum* (95 NY2d 611 [2001]). In that case, defendant, whose role was to test the purity of the heroin sought to be brought to New

York, met with the leader of the conspiracy in Brooklyn, New York. Subsequently, defendant was arrested in Massachusetts and convicted in New York for conspiracy in the second degree and attempted criminal possession of a controlled substance in the first degree based upon the conduct of an accomplice (the leader of the conspiracy) in New York in collecting money for the sale of drugs, making travel arrangements for defendant and directing the activities of defendant in Massachusetts. This Court noted in *Kassebaum* that the "issue under CPL 20.20 (1) (a) is whether the People established that defendant and his accomplices engaged in conduct *within New York* sufficient to establish an element of attempted criminal possession of a controlled substance as required by the statute." We stated:

> "Defendant's reliance on *Cullen* [*People v Cullen*, 50 NY2d 168 (1980)] is misplaced because none of the individuals held criminally accountable in *Cullen* were present in the prosecuting jurisdiction when the offense was consummated. In addition, *Cullen* stands for the proposition *that a defendant does not manifest the knowledge element necessary for criminal possession of a controlled substance until he or she takes possession of the narcotic*. This holding does not necessarily apply to an attempt offense which requires proof of a different *mens rea*—the intent to accomplish a criminal objective. Here, proof was offered that defendants engaged in substantial conduct in New York that manifested an intent to obtain heroin and return with it to New York. Standing alone, this conduct did not rise to a level sufficient to support criminal prosecution for attempted possession of a controlled substance because defendants' conduct did not constitute an attempt until the meeting in the Boston hotel room when defendants' conduct came 'dangerously near' criminal possession of heroin (*see, People v Acosta, supra,* 80 NY2d 665). Nonetheless, the conduct committed in New York evidenced defendant's intent sufficiently to establish the jurisdictional predicate underlying the prosecution under the CPL 20.20 (1) (a) element requirement." (*Id.* at 620-621 [emphasis supplied].)

Thus, *Kassebaum* permitted the prosecution and conviction in this state of an attempt to commit the crime of criminal posses-

sion of a controlled substance, not the completed crime of criminal possession.

Defendant's argument is that while a prosecution and conviction for the attempted possession of a controlled substance was held proper in *Kassebaum*, no actual or constructive possession occurred in that case in New York and, in that respect, a conviction of defendant in New York for the completed crime of possession would be an extension of *Kassebaum*. The Appellate Division agreed with this argument with respect to the crime of actual rather than constructive possession. The Appellate Division stated:

> "While in *People v Kassebaum* (95 NY2d 611 [2001], *cert denied* 532 US 1069 [2001]), the Court of Appeals upheld the conviction of the defendant for *attempted* possession of narcotics that were located in Massachusetts, there is an important distinction between attempted possession and possession. The *attempt* crime includes as an element that the defendant 'engag[ed] in conduct which tends to effect the commission of such crime' (Penal Law § 110.00); therefore, because the defendant in *Kassebaum* had engaged in conduct in New York that manifested an intent to obtain heroin and return with it to New York, the People successfully established that an element of the crime had occurred in this state (95 NY2d at 621)." (14 AD3d at 170.)

To uphold the conviction of the defendant for criminal possession of a controlled substance in New York, the Appellate Division did not rely on *Kassebaum* but rather relied on the doctrine of constructive possession.

## Jurisdiction Pursuant to Criminal Procedure Law § 20.20 (1) (c) and Constructive Possession

The People and the majority assert that territorial jurisdiction was obtained pursuant to CPL 20.20 (1) (c).[1] That section provides that

> "a person may be convicted in the criminal courts of this state of an offense defined by the laws of this state . . . when:

---

1. The majority states, "[B]ecause we conclude that jurisdiction is predicated on a conspiracy in New York to possess cocaine, we need not consider whether jurisdiction might also be established under . . . any other theory." (Majority op at 316.)

"1. Conduct occurred within this state sufficient to establish . . .

"(c) A conspiracy or criminal solicitation to commit such offense, or otherwise to establish the complicity of at least one of the persons liable therefor; provided that the jurisdiction accorded by this paragraph extends only to conviction of those persons whose conspiratorial or other conduct of complicity occurred within this state . . . ."

The position of the majority is that since there was evidence of a conspiracy to transport drugs to New York and since defendant made phone calls from New York to other conspirators in California, Supreme Court acquired jurisdiction to prosecute the crimes of conspiracy *and* criminal possession of a controlled substance. Nothing in the language of CPL 20.20 (1) (c) supports this interpretation. Moreover, the fact that the crime of criminal possession of a controlled substance was never completed here (the drugs and the defendant were in California at the time that the drugs were seized) necessarily prevents New York from exercising jurisdiction over the crime of criminal possession of a controlled substance pursuant to CPL 20.20 (1) (c). Here, Supreme Court tried defendant for criminal possession of a controlled substance, a crime that was never committed in New York. No previous case has held, as the majority does, that a criminal court can exercise jurisdiction over a crime that never actually occurred in New York.

Relying on a constructive possession theory, the People argued that defendant committed three counts of criminal possession of a controlled substance in the first degree. Any discussion of constructive possession in a criminal law context necessarily starts with the New York Penal Law.

Under Penal Law § 10.00 (8), " '[p]ossess' means to have physical possession or otherwise to exercise dominion or control over tangible property." With respect to the phrase "dominion or control," this Court stated in *People v Manini* (79 NY2d 561 [1992]) that:

"In New York, the rule has long been that to support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised 'dominion or control' over the property by a sufficient level of control *over the area in which the contraband is*

*found* or over the person from whom the contraband
is ***seized***" (*Manini*, 79 NY2d at 573 [citations omit-
ted and additional emphasis added]).

It is clear that no New York trial court could acquire jurisdic-
tion over the three counts of criminal possession because no
such crime occurred in New York. In order for criminal posses-
sion of a controlled substance, based on a theory of constructive
possession, to occur, defendant had to exercise dominion or
control over (1) an area, located in New York, where controlled
substances, weighing four ounces or more, were found, or (2) a
person, located in New York and actually in possession of con-
trolled substances weighing four ounces or more, from whom
the controlled substances were seized (*see* Penal Law § 220.21
[1]; *Manini*, 79 NY2d at 573-574). Defendant never exercised
that sort of dominion or control. The controlled substances at
issue were seized in California, not New York, from persons
who were in California. Moreover, at the time of the seizure, de-
fendant was in California. Put another way, the crime of crimi-
nal possession of a controlled substance never occurred in the
State of New York. As such, no such offense occurred. Therefore,
no jurisdiction over the crime can be exercised.[2]

*People v Fuente* (79 NY2d 561 [1992]) is a leading case on the
theory of constructive possession as it pertains to drug posses-
sion offenses. In that case, this Court found that Fuente was in
constructive possession of drugs. There, cocaine was seized from
a van occupied by two of Fuente's codefendants. The cocaine
was seized in New York. Telephone conversations had been
intercepted in which it was established that the cocaine was be-
ing transported at the direction of Fuente and was for Fuente's
customers. Moreover, Fuente was in a car following closely
behind the van from which the cocaine was seized and was
stopped by the police a short distance from where the van was
stopped.

Similarly, the companion case to *People v Fuente*, *People v Ma-
nini* (79 NY2d 561 [1992]), does not support the People's case
and should be decisive in rejecting the People's claim. Manini
was a California resident who sold drugs to persons in New
York. In June of 1988, a man named Paige obtained nine ounces
of cocaine from Manini in California "on credit" (*id.* at 565).

---

2. On these facts, California could acquire jurisdiction over and prosecute
defendant for drug possession. A drug possession crime was actually commit-
ted there.

Paige flew to New York with four ounces of cocaine and was arrested with another person as they left the Rochester, New York airport. Manini was indicted for the criminal possession of cocaine carried by Paige in New York. "The People acknowledge[d] in *Manini* that constructive possession is usually established by showing that a defendant exercised dominion and control over the place where contraband was seized or over the person who actually possessed the property" (79 NY2d at 572-573). The People's argument, however, was that Manini retained a "continuing possessory interest" and thus constructively possessed the property (*id.* at 573). This Court rejected that argument. Thus, Manini, a California resident, could not constructively possess, from California, drugs possessed by another in New York. Neither *People v Manini* nor *People v Fuente* supports the position of the People or of the majority here.

Relying on CPL 20.60 (1), the People, the lower courts and the majority argue that defendant, through his telephone statements regarding the conspiracy, was present in New York (i.e., he engaged in New York conduct) while exerting dominion and control over the drugs and engaging in the other activities in furtherance of defendant's possession of the controlled substances.[3] The majority and lower courts further argue that, as a result of these activities, Supreme Court acquired jurisdiction over the drug possession counts.

Any reliance on CPL 20.60 (1), however, is inappropriate. Under CPL 20.60 (1), a defendant who, by making oral or written statements, reaches into a jurisdiction to commit a crime or an element of a crime, is "present" in that jurisdiction due to the fact that the oral or written statements are deemed to be conduct within that jurisdiction. However, CPL 20.60 (1) applies only to crimes that do not require defendant to be physically present within New York in order to commit the crime.[4] Here, the criminal possession counts require knowing and unlawful possession of controlled substances in New York.

---

**3.** CPL 20.60 (1) provides that "[a]n oral or written statement made by a person in one jurisdiction to a person in another jurisdiction by means of telecommunication, mail or any other method of communication is deemed to be made in each such jurisdiction."

**4.** To determine whether CPL 20.60 (1) applies, the court necessarily has to take the elements of the crime charged into account. Some examples of crimes where CPL 20.60 (1) has been held to apply are: (1) promoting gambling (*see, e.g., People v Giordano*, 87 NY2d 441 [1995]); (2) criminal sale of controlled substances (*see, e.g., People v Muniz*, 215 AD2d 881 [3d Dept 1995]); and (3) conspiracy (*see, e.g.,* the case at bar).

The People's contention is that the controlled substances were constructively possessed in *New York*. The case went to the jury with an instruction that the controlled substances were constructively possessed in New York. Thus the trial court charged the jury, "That on or about May 19th, 1994, in the County of Queens, City of New York and State of California [*sic*], the defendants" constructively possessed cocaine.[5]

In summary, the controlled substances at issue were seized from persons and a house located in California, not recovered from an area or person located in New York. These drugs were never possessed in New York by defendant. Nor were they possessed within an area or by a person under defendant's dominion and control. Accordingly, the crime of criminal possession of a controlled substance never occurred within the territorial borders of New York. Thus, the trial court could not acquire jurisdiction over the crime.

By affirming the Appellate Division's holding that Supreme Court acquired territorial jurisdiction over the three criminal possession counts, the majority: (1) incorrectly credits the People's theory that defendant, under a constructive possession theory, committed the crime of criminal possession of a controlled substance in the first degree; and (2) incorrectly concludes that a New York criminal trial court can acquire jurisdiction over a criminal offense that was not actually committed in New York. The majority holds that "jurisdiction over an offense exists based on a conspiracy occurring in New York to commit that offense." (Majority op at 313.) This holding can only be correct if the possession offense which is the object of the conspiracy has been committed in New York and the defendant possessed drugs in New York. The majority's holding sets a dangerous precedent because it will allow a trial court to try a defendant for a completed crime where only an attempted crime or no crime has been committed.

Based on the foregoing, defendant's conviction on the drug possession counts should be vacated and the indictment on those counts dismissed.

---

**5.** The majority states, "Constructive possession occurring within New York's physical boundaries is simply not required to assert jurisdiction under CPL 20.20 (1) (c)." (Majority op at 314 n 6.) In this case, since the jury was charged that it had to find constructive possession in New York, in Queens County, if it did not so find, this conviction must be reversed.

Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur with Chief Judge KAYE; Judge G.B. SMITH dissents in a separate opinion.

Order affirmed.