OPINION OF THE COURT
Steven L. Barrett, J.
The instant indictment charges defendant with one count of criminal sale of a firearm in the first degree, one count of criminal sale of a firearm in the second degree, 14 counts of criminal sale of a firearm in the third degree, and conspiracy in the fourth degree, all related to an alleged scheme to sell guns to undercover officers and a confidential informant.* Defendant now moves to dismiss these counts on the ground that there is no territorial jurisdiction to prosecute these charges. For the following reasons, defendant’s motion is denied.
To briefly summarize the evidence before the grand jury, the allegations relating to the firearms sales grew out of an investigation into the sale of untaxed cigarettes from a Bronx warehouse set up by undercover officers. On numerous occasions, from August 2009 to July 2010, defendant came to the warehouse to purchase such cigarettes, and during these visits, defendant also discussed with the undercover officers, or with a confidential informant who was working with the undercover officers, the sale of firearms to the officers. At the Bronx warehouse: defendant and the officers and informant had *1091 numerous conversations in which defendant stated that he could obtain firearms to sell to them in South Carolina; defendant and the officers negotiated prices for specific gun models; the officers twice gave defendant a deposit for the purchase of firearms in South Carolina; and defendant and the undercover made plans to meet in South Carolina to complete the sale of the guns. During a number of these conversations at the Bronx warehouse, the undercover officers told defendant that they intended to bring the guns purchased from defendant in South Carolina back to the Bronx so that they could resell them to the Hamas terrorist organization in the Mideast. Of the 14 guns that defendant sold to the undercover agents, 13 were sold in South Carolina, only one was sold at the Bronx warehouse.
With respect to the count of criminal sale of a firearm in the third degree based upon the October 20, 2009 sale of a Walther P99 automatic weapon which took place at the Bronx warehouse, this court unquestionably has jurisdiction. (See CPL 20.20 [1] [a].)
With respect to the count charging defendant with conspiracy in the fourth degree, based upon the evidence that defendant agreed in New York to sell guns to the undercover officers and informant, which would be brought back to the Bronx for resale abroad, and that defendant committed overt acts in furtherance of the conspiracy in New York, territorial jurisdiction was sufficiently established. (See CPL 20.20 [1] [c]; [2] [d].)
With respect to the remaining substantive firearms counts pertaining to the guns purchased in South Carolina, none of the sales took place in the Bronx. However, jurisdiction still exists based upon the evidence establishing that defendant, in New York, conspired to sell guns which he believed were to be brought back to New York for resale. (See People v Carvajal, 6 NY3d 305, 314, 315 [2005] [“Plainly, jurisdiction over an offense exists based on a conspiracy occurring in New York to commit that offense. . . . Two facts make a clear case for jurisdiction to prosecute defendant under CPL 20.20 (1) (c): first, defendant was physically present in New York for some of the conspiratorial conduct on which jurisdiction is predicated; and second, the drugs in question were to be shipped to New York”].)
Moreover, even if none of the alleged conduct occurred in New York, there still exists territorial jurisdiction pursuant to CPL 20.20 (2) (b). Quite clearly, New York’s firearms statutes were designed to prevent the occurrence of a “particular effect” in New York, that being the material harmful impact, which we *1092 see on an everyday basis, that the possession and sale of illegal guns has on the welfare of the citizens of Bronx County. (See CPL 20.10 [4].) The negative impact on the residents of New York caused by the possession and sale of illegal firearms is exacerbated when the guns are purchased out of state in order to evade New York’s relatively strict gun control laws, only to be brought back to New York. Although here, the gun sales were made to undercover agents, who did not, in fact, bring the guns purchased in South Carolina back to New York in order to resell them, there was sufficient evidence before the grand jury indicating that defendant believed that the guns were to be brought to New York to be resold when he sold the guns to the undercover officers. Thus, regardless of whether the gun sales or resales actually took place in New York, because defendant’s conduct was performed with the intent that the guns would be brought back to New York for resale, jurisdiction over these offenses was conferred pursuant to CPL 20.20 (2) (b).
Finally, contrary to defendant’s argument, CPL 20.30 (1) does not divest New York of territorial jurisdiction over the gun sale and conspiracy counts. As the People point out, CPL 20.30 (1) uses the word “jurisdiction” as opposed to “state” in defining the scope of this exception to New York’s territorial jurisdiction. Thus, this court lacks jurisdiction with respect to these counts only if defendant’s conduct did not violate both South Carolina and federal firearms statutes. Because there was sufficient evidence presented to the grand jury that defendant’s conduct violated several federal firearms laws (see e.g. 18 USC §§ 922 [a] [5]; [g] [1]; 924 [n]), the mere fact that it appears that defendant’s conduct did not violate South Carolina’s gun laws is of no moment.
Accordingly, defendant’s motion is denied.

 The indictment also contains counts related to the alleged sale of untaxed cigarettes and other contraband to the undercover and informant which are not subjects of the instant motion.