[786 NYS2d 450]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALVARO CARVAJAL, Appellant.

First Department, December 9, 2004

---

**APPEARANCES OF COUNSEL**

*Paul J. Angioletti*, Staten Island, and *Lynne F. Stewart*, New York City, for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Patricia Curran* and *Mark Dwyer* of counsel), for respondent.

**OPINION OF THE COURT**

Saxe, J.

This appeal arises out of an investigation into a large and complex interstate drug operation by which cocaine was transported from San Francisco to New York in a fleet of cars with hidden compartments. Defendant Alvaro Carvajal and numerous others were ultimately arrested in connection with this investigation, and defendant was convicted of conspiracy in the second degree and three counts of criminal possession of a controlled substance in the first degree. However, because the drugs with which he is charged were found in California, and because he, too, was located in California at the time the drugs were seized, defendant raises on appeal a challenge to his prosecution in this state for the possession charges. We must therefore address the issue of territorial jurisdiction.

## Facts

The underlying investigation was begun in 1993 by the New York State Drug Enforcement Task Force, and ultimately focused on a Queens garage called W&G Auto Repair, operated by Freddy Lasso. Surveillance of W&G, combined with the in-

formation obtained from months of telephone calls intercepted pursuant to eavesdropping warrants, disclosed that the operations were headed by individuals in Queens, San Francisco and Chicago. It was determined that Freddy Lasso headed the New York operations along with Luis Grueso Camacho, and defendant was their partner on the West Coast. The transportation coordinator for the organization, located in Chicago, was known as Chicanero; he was neither arrested nor ever identified by his true name. These individuals employed many others to drive, store, and otherwise take care of the drugs and equipment during the process; indeed, the transportation and storage of the drugs was carefully planned so that these individuals who acted as managers did not come into physical contact with the drugs.

Defendant and Freddy Lasso spoke frequently by telephone, both to apprise one another about the progress of arranging for cars with the necessary hidden compartments and to report the progress of the trips by which drugs were transported to New York. When problems arose, such as a car being stopped or a driver being arrested, they discussed over the telephone how to deal with the situation. In one intercepted conversation, defendant specifically referred to his "responsibility" and to his intention to take care of the workers' travel expenses related to problems encountered on a particular trip. And, on one occasion, in May of 1994, defendant made a trip to New York, and visited W&G.

On May 19, 1994, one of the cars used by the operations was stopped and searched, in California, turning up 21 kilograms of cocaine along with business cards, including a W&G business card. Another of the cars was later retrieved from the parking lot of a California shopping center and searched, and an additional 30 kilograms of cocaine were recovered from a hidden compartment in it.

The next day, Freddy Lasso and defendant spoke of these events and discussed the need to protect the drugs hidden in the "stash house." Defendant assured Lasso that it had already been done and that everything was fine. They also discussed that even without the confiscated narcotics, other narcotics sales would permit them to break even, although they would not make a profit. Later they discussed the possibility that their Chicago partner had stolen narcotics, suggesting that he be interrogated.

A June 15, 1994 search of the California "stash house" netted 23 more kilograms of cocaine. Defendant thereafter paged

Freddy Lasso and reported the details to him. It also came out in their conversation that the house had also contained a substantial amount of cash that, as a favor, defendant had allowed another dealer named Tabla to store in the house. Defendant said he planned to account for the remaining drugs in another stash house as best he could. Freddy told defendant to forget about Tabla's money and get the drugs out of California as fast as he could.

Evidence thereafter obtained in New York in a series of raids further confirmed the connection between the New York and California operations, and further connected W&G with a garage next door to it, in which were found several additional cars with hidden compartments installed. Defendant, Freddy Lasso, and others were arrested in late September 1994.

## Discussion

■ Various related issues arise based upon the assertion that this state lacked territorial jurisdiction to prosecute the three counts of possession of a controlled substance in the first degree.

"Because the State only has power to enact and enforce criminal laws within its territorial borders, there can be no criminal offense unless it has territorial jurisdiction" (*People v McLaughlin*, 80 NY2d 466, 471 [1992], citing Restatement of Conflict of Laws §§ 425, 428, and *Nielsen v Oregon*, 212 US 315 [1909]). Territorial jurisdiction "goes to the very essence of the State's power to prosecute" and therefore may never be waived and must be proved beyond a reasonable doubt (*id.*).

Criminal Procedure Law § 20.20, which in essence requires that "either the alleged conduct or some consequence of it must have occurred within the State" (*see McLaughlin* at 471), sets forth in full the circumstances under which New York State may assert criminal jurisdiction:

> "Except as otherwise provided in this section and section 20.30, a person may be convicted in the criminal courts of this state of an offense defined by the laws of this state, committed either by his own conduct or by the conduct of another for which he is legally accountable pursuant to section 20.00 of the penal law, when:
>
> "1. Conduct occurred within this state sufficient to establish:
>
> "(a) An element of such offense; or

"(b) An attempt to commit such offense; or

"(c) A conspiracy or criminal solicitation to commit such offense, or otherwise to establish the complicity of at least one of the persons liable therefor; provided that the jurisdiction accorded by this paragraph extends only to conviction of those persons whose conspiratorial or other conduct of complicity occurred within this state; or

"2. Even though none of the conduct constituting such offense may have occurred within this state:

"(a) The offense committed was a result offense and the result occurred within this state. If the offense was one of homicide, it is presumed that the result, namely the death of the victim, occurred within this state if the victim's body or a part thereof was found herein; or

"(b) The statute defining the offense is designed to prevent the occurrence of a particular effect in this state and the conduct constituting the offense committed was performed with intent that it would have such effect herein; or

"(c) The offense committed was an attempt to commit a crime within this state; or

"(d) The offense committed was conspiracy to commit a crime within this state and an overt act in furtherance of such conspiracy occurred within this state; or

"3. The offense committed was one of omission to perform within this state a duty imposed by the laws of this state. In such case, it is immaterial whether such person was within or outside this state at the time of the omission."

Defendant concedes that New York had jurisdiction to prosecute him on the conspiracy charge under CPL 20.20 (2) (d). However, he argues that there was no basis for territorial jurisdiction with regard to the three charges of criminal possession of a controlled substance in the first degree, regarding the cocaine seized in California. The portion of the territorial jurisdiction statute applicable here is CPL 20.20 (1) (a), which requires the prosecution to establish that an element of the crime occurred in New York. Defendant contends that none of

the elements of that crime may be said to have occurred in New York.

Indeed, we are aware of no other case in which a defendant was convicted of possession of a controlled substance when neither the drugs at issue nor the defendant was in New York at the time of the offense. While in *People v Kassebaum* (95 NY2d 611 [2001], *cert denied* 532 US 1069 [2001]), the Court of Appeals upheld the conviction of the defendant for *attempted* possession of narcotics that were located in Massachusetts, there is an important distinction between attempted possession and possession. The *attempt* crime includes as an element that the defendant "engag[ed] in conduct which tends to effect the commission of such crime" (Penal Law § 110.00); therefore, because the defendant in *Kassebaum* had engaged in conduct in New York that manifested an intent to obtain heroin and return with it to New York, the People successfully established that an element of the crime had occurred in this state (95 NY2d at 621).

However, despite the absence of a prior similar case, we conclude that neither defendant's being situated in California, nor the drugs at issue having ultimately been seized in California, prevents his prosecution in New York for possession of those drugs. The evidence amply supports the People's claim that an element of the crime occurred in this state.

The elements of this crime are merely the knowing and unlawful possession of four or more ounces of a narcotic drug (*see* Penal Law § 220.21 [1]). Such possession may be physical, or it may be constructive (*see* CJI2d[NY] Penal Law § 220.21 [1]). The concept of constructive possession permits a conviction of possession upon a showing that although the defendant did not have physical possession, he exercised dominion and control over the contraband (*see* Penal Law § 10.00 [8]). The defendant may physically be elsewhere, separate from the drugs, as long as he exercised dominion and control over the locations where the subject drugs were discovered or over the subordinates who were physically in possession of the drugs (*see People v Roque*, 99 NY2d 50, 54 [2002]; *People v Manini*, 79 NY2d 561, 573-575 [1992]).

A defendant may even be in another jurisdiction. In *Manini*, while the Court rejected the claim that the defendant in California was in constructive possession of the cocaine in New York, it was because the record failed to establish that Manini exercised any type of ongoing authority over the middleman to whom he had sold the cocaine; the problem was not that the drugs were

in New York and Manini in California, but that Manini did not maintain continued dominion and control over the middleman or the cocaine.

Here, on the other hand, there was ample evidence that regardless of where he was situated, defendant at all times exercised continued dominion and control over the drugs that were ultimately seized and the locations where the subject drugs were discovered, as well as over the employees who were found in possession of the drugs. Evidence demonstrated that defendant used telephone calls with Freddy Lasso in New York, and with others, to exercise a substantial degree of control over where and how the drugs that were ultimately seized would be located and transported. For example, intercepted telephone conversations in which defendant participated shortly after the raid on the "stash house" established that he was ultimately in charge of that location, from which 23 kilograms of cocaine were seized on June 15, 1994. Similarly, in an intercepted telephone conversation on May 17, 1994, defendant told Freddy Lasso that he would put 21 kilograms of cocaine in the white Mazda; on May 19, 1994, the white Mazda was searched and 21 kilograms of cocaine was found hidden inside. Also on May 19, 1994, defendant and Freddy Lasso had discussed a blue Volvo that defendant had arranged to be loaded with cocaine and picked up, which car the police also seized that night and in which they found 30 kilograms of cocaine.

Furthermore, defendant may be deemed to have been physically in New York while he exercised continued dominion and control over the drugs that were ultimately seized. Pursuant to CPL 20.60 (1), a statement made over the telephone by a person situated in one jurisdiction to a person in another jurisdiction is deemed to have been made in both jurisdictions. Consequently, during every interstate telephone discussion between defendant and Freddy Lasso regarding the drugs that were ultimately the subject of the challenged charges, defendant is deemed to have been in New York for jurisdictional purposes. The evidence therefore supports the conclusion that in the course of telephone conversations during which defendant is deemed to have been located in New York, he, Freddy Lasso and others, knowingly intended to and did exercise constructive possession over the drugs with which he is charged (*see People v Bundy*, 90 NY2d 918, 920 [1997]). Accordingly, there is ample evidence that defendant engaged in conduct in New York constituting an element of the drug possession charges (*see* CPL 20.20 [1] [a]; *People v Kassebaum, supra*).

Defendant's reliance on *People v Cullen* (50 NY2d 168, 174-175 [1980]) is misplaced. There, the Court discussed a jury charge instructing that Nassau County would have jurisdiction as long as the defendant, while in Nassau County, had formed the intent to possess or sell the controlled substance; the Court explained that a jurisdictional predicate for the crime of criminal possession of a controlled substance may not be based "upon the theory that 'knowledge' occurred in one county and 'possession' in another" because they must occur simultaneously (*Cullen* at 175). But *Cullen* did not involve a claim of constructive possession, as does the present case. In the case before us, at the same moments defendant and his cohorts were in constructive possession of the drugs at issue by actively asserting dominion and control over them by making decisions and issuing directives over the telephone as to how and by whom they should be handled, they also harbored the intent to be in such possession. There is no problem here with the simultaneity of intent and possession.

█ We turn to defendant's contention that since the issue of territorial jurisdiction has been held to be nonwaivable (*see People v McLaughlin*, 80 NY2d 466, 471 [1992], *supra*; *People v Casias*, 303 AD2d 294 [2003], *lv denied* 100 NY2d 579 [2003]), defense counsel's decision to withdraw any claim that New York lacked territorial jurisdiction amounted to ineffective assistance, and that the trial court erred in declining to submit this issue to the jury notwithstanding counsel's position. For the reasons that follow, we conclude that no error or ground for reversal is presented on this point.

Prior to charging the jury, the trial court discussed with counsel the rule that territorial jurisdiction must be proved beyond a reasonable doubt and cannot be waived. In order to carry out its obligation, the trial court addressed exactly how the jury would be charged on the subject with respect to the possession counts. At that point, each defendant's attorney specifically *withdrew* any request that the jury be charged on the issue of territorial jurisdiction.

Defendant now argues that the strategy adopted by defense counsel amounted to an impermissible waiver of the issue of territorial jurisdiction. We disagree. While the *McLaughlin* court remarked that territorial jurisdiction may never be waived, on the very next page it also recognized that *the point is not always put in issue*, and only when the State's right to prosecute is *disputed* must territorial jurisdiction be proved to the jury be-

yond a reasonable doubt, just like the elements of the crime itself (*see* 80 NY2d at 472). In the present case, defense counsel made a considered decision not to submit the issue to the jury, thereby simply removing the issue of territorial jurisdiction from the dispute. This decision on the part of the defendants' attorneys is the equivalent of a stipulation to a fact that the People would otherwise have to prove beyond a reasonable doubt.

To the extent defendant implies that the court has no authority to omit the territorial jurisdiction charge even if counsel requests its omission based upon an assessment of the evidence, defendant's own position on appeal contradicts the claim. Notably, on appeal, defendant does not take issue with the lack of a jury charge on territorial jurisdiction with regard to the conspiracy count. From this it may be inferred that the obligation to charge the jury on territorial jurisdiction does not arise when the defendant concedes—as he does with the conspiracy charge—that the evidence supporting the assertion of territorial jurisdiction was sufficient on that charge. Consequently, not even defendant can logically argue that the remark in *McLaughlin* about nonwaivability requires the court to charge the jury on the territorial jurisdiction issue even if the defendant concedes that the evidence on that issue is sufficient and stipulates that the issue should not be given to the jury.

Nor may defendant successfully establish his claim of ineffective counsel based upon counsel's decision to withdraw the territorial jurisdiction issue from the jury's consideration, in view of our conclusion that the evidence fully established jurisdiction pursuant to CPL 20.20 (1) (a).

The remaining issues raised on appeal are unpreserved and do not avail defendant. The use of police officers as experts to explain the coded language of the intercepted telephone calls was proper (*see People v Lasso*, 268 AD2d 313 [2000], *lv denied* 94 NY2d 922 [2000]). While the officer went on to give his opinion as to what the participants were doing in the activities described in the coded language, no objection was made by defendant to the questions posed or the answers supplied, and any objection to the error is, accordingly, unpreserved, and we decline to review it in the interest of justice (*see People v Robinson*, 36 NY2d 224, 228-229 [1975]). In any event, to the extent there was any error in the extent of the officer's expert testimony, it was minor and harmless.

Since the remainder of defendant's ineffective assistance claim largely involves matters of trial counsel's strategy and

preparation, it cannot be reviewed on this record (*see People v Love*, 57 NY2d 998 [1982]; *People v Stultz*, 2 NY3d 277, 284 [2004]). Moreover, defendant's claim that he was deprived of his right to retain an attorney of his choice rests entirely on factual assertions outside the record and is thus unreviewable (*see People v Kinchen*, 60 NY2d 772 [1983]). On the existing record, defendant has failed to show "the absence of strategic or other legitimate explanations" for the various aspects of counsel's conduct that are challenged on appeal (*People v Rivera*, 71 NY2d 705, 709 [1988]), and on the present record we find that defendant received effective assistance (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]). While defendant faults his trial counsel for failing to make an assortment of motions, applications and objections, he has not shown that any of these devices would have succeeded (*see Stultz*, 2 NY3d at 287), or that the absence of those actions had any adverse impact on his defense (*see People v Hobot*, 84 NY2d 1021, 1024 [1995]).

Finally, we perceive no basis for reducing the sentence.

Accordingly, the judgment of the Supreme Court, New York County (Bonnie G. Wittner, J.), rendered April 1, 1996, convicting defendant, after a jury trial, of conspiracy in the second degree and three counts of criminal possession of a controlled substance in the first degree, and sentencing him, as a second felony offender, to an aggregate term of 35 years to life, should be affirmed.

NARDELLI, J.P., SULLIVAN, ELLERIN and SWEENY, JJ., concur.

Judgment, Supreme Court, New York County, rendered April 1, 1996, affirmed.