09-0826-pr
Carvajal v. Artus

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: September 29, 2010      Decided: January 25, 2011)

Docket No. 09-0826-pr

- - - - - - - - - - - - - - - - - - - -x

ALVARO CARVAJAL,

                 Petitioner-Appellant,

          - v.-

SUPERINTENDENT DALE ARTUS,

                 Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - -x

     Before:      JACOBS, Chief Judge, FEINBERG and
                  CABRANES, Circuit Judges.

     Appeal from the denial of an application for a writ of habeas corpus in the United States District Court for the Southern District of New York (McMahon, J.).  Alvaro Carvajal, a New York State prisoner, argues that his prosecution in New York for the unlawful possession of a controlled substance exceeded New York's criminal territorial jurisdiction (because both he and the drugs that

formed the basis for the prosecution were found in California), and therefore violated his federal constitutional rights. Carvajal contends that affirmance of his conviction by the New York Court of Appeals was contrary to, or an unreasonable application of, clearly established Supreme Court precedent that limits a state's prosecutorial power to only those offenses that were either committed within the prosecuting state or that were committed outside but had both an intended and actual detrimental effect within. We dismiss the application on the ground that Carvajal's federal constitutional claim is procedurally defaulted.

GEORGIA J. HINDE, New York, New York, for Petitioner-Appellant.

THOMAS B. LITSKY, Assistant Attorney General (Andrew M. Cuomo, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Roseann B. MacKechnie, Deputy Solicitor General for Criminal Matters, on the brief), New York, New York, for Respondent-Appellee.

DENNIS JACOBS, Chief Judge:

Alvaro Carvajal, a New York State prisoner, appeals from the denial of an application for habeas corpus relief in the United States District Court for the Southern

2

District of New York (McMahon, J.). He argues that his prosecution in New York for the unlawful possession of a controlled substance exceeded New York's criminal territorial jurisdiction, and thereby violated his federal constitutional rights, because both he and the drugs that formed the basis for his prosecution for unlawful possession of a controlled substance were found in California. Carvajal challenges the power of New York State to prosecute him for the possessory offenses for which he was convicted. But our power to grant relief is limited by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1219 (1996) ("AEDPA"), which bars relief to a state prisoner who raises a federal constitutional claim unless the state court's ruling was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and the claim was fairly presented to the state court.

Carvajal contends that affirmance of his conviction by the New York Court of Appeals was contrary to, or an unreasonable application of, clearly established Supreme Court precedent that limits a state's prosecutorial power to only those offenses that were committed within the

3

prosecuting state or that were committed outside but had both an intended and actual detrimental effect within.

The New York Court of Appeals determined that the trial court's exercise of territorial jurisdiction over Carvajal was proper under state law, noted that Carvajal had never challenged the state's jurisdiction on constitutional grounds, and upheld his conviction. The United States District Court for the Southern District of New York dismissed the application for a writ of habeas corpus, but issued a certificate of appealability on the question of whether New York had territorial jurisdiction to prosecute Carvajal for three counts of drug possession when he possessed the drugs at issue exclusively out-of-state and was arrested in another state, but participated in a conspiracy to transport drugs into New York.

The force of Carvajal's argument notwithstanding, we must deem his claim procedurally defaulted and dismiss his application for a writ of habeas corpus.

## BACKGROUND

In 1993, the New York State Drug Enforcement Task Force launched an investigation into a Colombian narcotics trafficking organization set up to transport cocaine from

4

the San Francisco area to New York City.  Intercepted telephone conversations and other surveillance indicated that Carvajal was in charge of the West Coast end and that Carvajal and his coconspirators in New York employed a network of individuals to "drive, store, and otherwise take care of the drugs and equipment."  People v. Carvajal, 786 N.Y.S.2d 450, 452 (App. Div. 1st Dep't 2004).  Carvajal made one trip to New York, in 1994, but was not arrested at that time or found in possession of any drugs.

Ultimately, California authorities recovered large quantities of drugs hidden in vehicles with secret compartments and a "stash house" used by the trafficking organization in California.  Carvajal was arrested in California and extradited to New York where he was charged with conspiracy in the second degree and three counts of criminal possession of a controlled substance.  All of the drugs that formed the basis for these possession counts were found and seized in California.  On his arrest, Carvajal was in possession of numerous documents linking him to other members of the narcotics conspiracy, but no drugs were on his person or in his vicinity.  Under New York law, Carvajal was deemed to be in constructive possession of the drugs

5

seized in California because he exercised dominion over subordinate members of the conspiracy who were found in actual possession of the narcotics, and because he exercised control over the cars and "stash house" where the drugs were seized. See People v. Manini, 79 N.Y.2d 561, 569-70 (1992). Carvajal was tried, along with several of his New York coconspirators, in the State Supreme Court for New York County.

The trial evidence reflected numerous phone calls between Carvajal and his New York coconspirators and emphasized Carvajal's role in supervising the distribution conspiracy from California. See Carvajal v. Artus, No. 07 Civ. 10634 (CM)(AJP), 2008 WL 4555531, at *2-*9 (S.D.N.Y. Oct. 10, 2008). Carvajal's application for relief does not challenge the sufficiency of the evidence linking him to the conspiracy. See N.Y. Crim. Proc. Law § 20.20(2)(d). The issue is whether he is entitled to habeas relief with respect to the possession counts of his conviction because New York lacked the power to prosecute him for those offenses.

At the state trial, Justice Bonnie G. Wittner informed the parties that, under People v. McLaughlin, 80 N.Y.2d 466,

6

469 (1992), the prosecution need not prove the existence of jurisdiction beyond a reasonable doubt unless the defense disputed the existence of proper jurisdiction. Carvajal, 2008 WL 4555531, at *9. Defense counsel undertook to raise the jurisdiction issue via cross-examination of one of the prosecution's witnesses. Justice Wittner emphasized her view that jurisdiction was established as to the possession counts by evidence of Carvajal's cell phone conversations with his New York coconspirators, because each of those conversations "went through a cell [s]ite within the geographical territory of the State of New York." Id. Oddly, Carvajal's counsel said he did not "disagree" with the trial judge's statement of the law on this point. Id. Nonetheless, the trial judge announced that, at the request of the defense, she would charge the jury on the question of whether the State had territorial jurisdiction. Id. at *10. Despite the fact that the trial judge was willing to give a charge on jurisdiction, Carvajal and his codefendant subsequently withdrew their request for such a charge. Id. Apparently, this was done because defense counsel objected to the manner in which Justice Wittner intended to charge the jury on jurisdiction. It seems defense counsel sought

7

to avoid the submission of six interrogatories to the jury, which would conform to the prosecution's theory of jurisdiction, and which "would require reading the overt acts in the indictment" to the jury.[1] App. R. Ex. D at 34.

Carvajal was convicted on all counts of the indictment and sentenced to an aggregate indeterminate prison term of thirty-five years to life. He was subsequently resentenced under the Rockefeller Drug Reform Act to a determinate sentence of twelve-and-a-half to twenty-five years on the conspiracy conviction, and thirteen years imprisonment for two of the possession counts, all to run concurrently, and a consecutive term of thirteen years' imprisonment on the third possession count. But for the consecutive term of imprisonment imposed on the third possession count, Carvajal would be immediately eligible for parole and removal to Colombia.

Represented by new counsel, Carvajal appealed his conviction to the New York State Appellate Division, First Department. In relevant part, Carvajal argued that the

---

[1] We confine ourselves to a review of the issue presented in the certificate of appealability and do not address the wisdom of trial counsel's decision on this point.

8

question of New York's territorial jurisdiction was non-waivable because "[t]erritorial jurisdiction refers to the power of the court to hear and determine the case," and that territorial jurisdiction was lacking on the possession counts because the acts of possession "took place wholly outside of New York."  App. R. Ex. D at 25.  Carvajal's brief to the Appellate Division cited the New York Court of Appeals' decision of McLaughlin, which recognized that "[t]he general rule in New York is that, for the State to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the State." 80 N.Y.2d at 471; see also N.Y. Crim. Proc. Law § 20.20.

The Appellate Division agreed that "[b]ecause the State only has power to enact and enforce criminal laws within its territorial borders, there can be no criminal offense unless it has territorial jurisdiction."  Carvajal, 786 N.Y.S.2d at 453.  And, the Appellate Division remarked that it was "aware of no other case in which a defendant was convicted of possession of a controlled substance when neither the drugs at issue nor the defendant was in New York at the time of the offense."  Id. at 454.  Nevertheless, the court held that the State had jurisdiction to prosecute Carvajal under

9

Criminal Procedure Law section 20.20(1)(a).  Carvajal, 786 N.Y.S.2d at 454, 455; see also N.Y. Crim. Proc. Law § 20.20(1)(a) (providing for jurisdiction over an offense when conduct occurred within New York sufficient to establish an element of the offense).  Carvajal was "deemed to have been in New York for jurisdictional purposes" because of phone calls made to his New York coconspirators, and was deemed to have constructively possessed the drugs in New York because he exercised control over the drugs and his subordinates who held the drugs in California.  Carvajal, 786 N.Y.S.2d at 455; see also N.Y. Crim. Proc. Law § 20.60(1) (providing that "[a]n oral or written statement made by a person in one jurisdiction to a person in another jurisdiction by means of telecommunications, mail or any other method of communication is deemed to be made in each such jurisdiction").[2]  The Appellate Division upheld

_____

[2] Carvajal argued, without success, that the court could not rely on New York Criminal Procedure Law § 20.60 to establish that an element of the possession offense occurred in New York.  Carvajal maintained:  "Put simply, under Criminal Procedure Law § 20.60(1), it is the communication which is deemed to be in each jurisdiction, not the objects about which there is communication."  App. R. Ex. D at 33; see also, e.g., People v. Giordano, 87 N.Y.2d 441, 449 (1995) (finding N.Y. Crim. Proc. Law § 20.60(1) "provides that oral statements made over the telephone are deemed to be statements made in both the sending and receiving

10

Carvajal's conviction on the ground that "[a]n element of [the possession] offense[s]" occurred within New York State.[3]  Carvajal, 786 N.Y.S.2d at 454, 457; see also N.Y. Crim. Proc. Law § 20.20(1)(a).

Carvajal sought, and was granted, leave to appeal to the New York Court of Appeals.  App. R. Ex. H.  Citing New York law, Carvajal's merits brief argued that his trial suffered from a "fundamental, nonwaivable defect in the mode of procedure," People v. Patterson, 39 N.Y.2d 288, 295 (1976): that New York lacked jurisdiction to prosecute him for the possession offenses.  App. R. Ex. I at 2.  Starting

counties"); People v. Cespedes, 799 N.Y.S.2d 703, 713-14 (Sup. Ct. N.Y. Co. 2005) ("Criminal Procedure Law § 20.60(1) should . . . be given a narrow application. . . .  [It] insures that if the requirements of venue are otherwise satisfied by a sufficient criminal connection or effect in the county of prosecution, the transmittal of a criminal statement, such as a fraudulent insurance claim, by mail from one county to another, or the occurrence of a criminal conversation on the telephone between coconspirators in two counties, results in venue in either county.").

[3] One commentator argued that the reasoning of the Appellate Division, by which "Carvajal's constructive presence in New York was bootstrapped into dominion and control over cocaine located in California, borders on Kafkaesque."  Abraham Abramovsky, A Bootstrap Too Far: Constructive Presence, Constructive Possession, N.Y. L.J., Jan. 10, 2005.  According to Abramovsky, "Utilizing constructive presence to establish constructive possession is one construction too many."  Id.

11

from the proposition that "territorial jurisdiction implicates the [s]tate's inherent authority to prosecute and punish a suspect for alleged criminal conduct," the New York Court of Appeals held that, though a defendant may waive proper venue and the opportunity to require the prosecutor to prove the existence of jurisdiction to a jury beyond a reasonable doubt, "the fundamental question whether--as a matter of law--[New York] State has the power to hear the case" cannot be waived.  People v. Carvajal, 6 N.Y.3d 305, 312 (2005) (Kaye, C.J.).  Reaching the merits, however, the court upheld the State's exercise of jurisdiction over the possession offenses.  Id. at 313.

The New York Court of Appeals declined to rest its decision on N.Y. Crim. Proc. Law § 20.20(1)(a), on which the lower state courts had relied.  Perhaps because § 20.20(1)(a) requires that an element of the offense take place in New York,[4] the New York Court of Appeals instead

_____

[4] The intermediate state court concluded that an element of the possession offense did occur in New York. But, the New York Court of Appeals invoked "principles of judicial restraint" as its rationale for declining to decide whether jurisdiction was established under New York Criminal Procedure Law § 20.20(a)(1).  It appears that the New York Court of Appeals was reluctant to endorse the idea that an individual located in California should be deemed to have acted in New York for purposes of obtaining jurisdiction

12

founded jurisdiction on § 20.20(1)(c), Carvajal, 6 N.Y.3d at 312-13, which provides:

> [A] person may be convicted in the criminal courts of [New York State] of an offense defined by the laws of [New York State], committed either by his own conduct or by the conduct of another for which he is legally accountable . . . when:
>
> > 1. Conduct occurred within this state sufficient to establish:
> >
> > . . . .
> >
> > (c) A conspiracy or criminal solicitation to commit such offense, or otherwise to establish the complicity of at least one of the persons liable therefor; provided that the jurisdiction accorded by this paragraph extends only to conviction of those persons whose conspiratorial or other conduct of complicity occurred within [New York State].

N.Y. Crim. Proc. Law § 20.20(1)(c).  The court determined that this jurisdictional requirement was satisfied because "while he was present in" New York "both physically and by telephone," Carvajal "conspired with his accomplices and engaged in overt acts in furtherance of *their* possession of significant quantities of cocaine and their plan to transport the cocaine to New York."  Carvajal, 6 N.Y.3d at 315 (emphasis added).  The court denied that this analysis

---

over a possession offense by virtue of the fact that he had phone conversations with individuals in New York.

13

amounted to jurisdictional "bootstrapping." Id. at 316. Finally, the New York Court of Appeals observed that Carvajal "never alleged any constitutional violation, federal or state, concerning his prosecution by New York." Id. The court thus indicated that its decision was grounded solely in an interpretation of the relevant provision of the State's jurisdictional statute.

Judge George Bundy Smith's forceful dissent argued:

> [T]he Constitution of the United States, the Constitution of the State of New York and the laws of the State of New York do not permit a person to be found guilty of criminal possession of a controlled substance on a theory of constructive possession rather than actual possession where both the substance and the defendant are in California.

Carvajal, 6 N.Y.3d at 317 (G.B. Smith, J., dissenting). The dissent also took the position that "[b]ecause territorial jurisdiction goes to the authority of the court to try a defendant for the particular crimes in issue, no preservation is necessary." Id. at 322.

Following the affirmance by the New York Court of Appeals, Carvajal filed pro se a motion to vacate his conviction. See N.Y. Crim. Proc. Law § 440.10; Carvajal, 2008 WL 4555531, at *20. The State Supreme Court denied the motion, and the First Department denied leave to appeal.

14

Carvajal, 2008 WL 4555531, at *21. Next, Carvajal filed a timely application pro se for a writ of habeas corpus in the United States District Court for the Southern District of New York. Magistrate Judge Peck issued a report recommending that Carvajal's application be denied but that a certificate of appealability should issue. Id. at *1.

The magistrate judge proceeded on the basis that the state court had adjudicated Carvajal's federal constitutional claim on the merits. (In so doing, the magistrate judge overlooked or discounted the statement in the Court of Appeals' opinion that its decision was grounded solely in state statutory law.) Accordingly, the magistrate judge analyzed the jurisdictional merits, giving deference to the decision of the New York Court of Appeals. Id. at *25; see also Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006). The magistrate judge concluded that the decision of the New York Court of Appeals was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Carvajal, 2008 WL 4555531, at *25. The relevant Supreme Court precedent identified by the magistrate judge is Strassheim v. Daily, 221 U.S. 280 (1911), which held: "Acts done outside a jurisdiction, but

15

intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." Id. at 285. The magistrate judge concluded: "whether or not the New York Court of Appeals properly interpreted the state [Criminal Procedure Law's] long-arm provisions, as a matter of federal constitutional law, [he could not] say that the New York Court of Appeals' decision was 'contrary to' or an 'unreasonable application' of Supreme Court precedent." Carvajal, 2008 WL 4555531, at *33.

The district judge adopted the recommendation of the magistrate judge, observing in a supplemental memorandum that the majority opinion of the New York Court of Appeals "specifically refused to entertain any discussion of federal constitutional law, on the ground that petitioner had failed to raise any federal constitutional challenge to the trial court's exercise of jurisdiction." Carvajal v. Artus, No. 07 Civ. 10635 (CM) (AJP), 2009 WL 62177, at *2 (S.D.N.Y. Jan. 9, 2009). The district judge recognized that "the New York Court of Appeals' interpretation of [Criminal Procedure Law section 20.20(1)(c)] is the last word on what that

16

[s]tate statute means." Id. Still, the court considered that, although this procedural posture would normally bar relief (unless Carvajal could demonstrate cause for his default in state court and resulting prejudice), "[t]he issue is more confusing than usual in this particular case" given the state court's ruling that jurisdiction cannot be waived. Id. Thus the state court's assertion that state statutory jurisdiction can never be waived was treated by the district court as a "sub silentio determination of federal constitutional law"--despite the state court's disclaimer "that it was not considering any such issue." Id. at *3 n.1 (internal quotation marks omitted). Accordingly, the district court issued a certificate of appealability "limited to the issue of whether New York lacked territorial jurisdiction to try petitioner for the three counts of criminal possession of a controlled substance."[5] Id. at *5.

**DISCUSSION**

**I**

We review de novo a district court's denial of a writ

---

[5] This Court appointed counsel to represent Carvajal on appeal. See Appellate Doc. Entry Date Sept. 22, 2009.

17

of habeas corpus. Cotto v. Herbert, 331 F.3d 217, 229 (2d Cir. 2003). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a). However, before a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies. Id. § 2254(b)(1)(A). "[E]xhaustion of state remedies requires that [a] petitioner fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (citing Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks and alterations omitted)); see also Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000). The exhaustion requirement is animated by "notions of comity between the federal and [s]tate judicial systems." Strogov v. Attorney Gen. of N.Y., 191 F.3d 188, 191 (2d Cir. 1999). True, a state prisoner is not required to cite "chapter and verse of the Constitution" in order to satisfy this requirement, Daye

18

v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (in banc); still, he must present his challenge in terms that are "likely to alert the [state] court[s] to the claim's federal nature." Lurie, 228 F.3d at 124 (quoting Daye, 696 F.2d at 192). A petitioner may satisfy the fair presentation requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194.

If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we "must deem the claim[] procedurally defaulted." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (noting the "apparent salve" of deeming a claim not presented in state court exhausted is "cold comfort"). Our dismissal of an application for habeas relief on the ground of procedural default amounts to "a disposition of the habeas claim on the merits." Id. An applicant seeking

19

habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating "cause for the default and prejudice" or by showing that he is "actually innocent" of the crime for which he was convicted. Id.

**II**

When a habeas applicant fails to exhaust his federal constitutional claim in state court--and there has been no showing of cause and prejudice or actual innocence--this Court will generally be barred from granting habeas relief. See Gray v. Netherland, 518 U.S. 152, 161-62 (1996). Here, however, Carvajal argues that the prosecution forfeited any defense that would be based on his procedural default by its failure to rely on this ground before the district court. The prosecution acknowledges that it did not rely on a procedural default defense in the district court but urges us nonetheless to consider whether Carvajal failed to raise his jurisdictional challenge in federal constitutional terms in the state courts, and is thus barred from obtaining relief in this Court.

Prior to AEDPA, a state was "normally . . . obligated to raise and preserve" the procedural default defense.

Trest v. Cain, 522 U.S. 87, 89 (1997) (internal quotation marks and alterations omitted). At the same time, it was clear that a federal appellate court was "not obligated to regard the [prosecution's] omission [of the defense] as an absolute waiver of the claim." Granberry v. Greer, 481 U.S. 129, 133 (1987); see also Washington v. James, 996 F.2d 1442, 1448 (2d Cir. 1993). AEDPA expressly provides that the "[s]tate shall not be deemed to have waived the *exhaustion* requirement or be estopped from reliance upon the requirement unless the [s]tate, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added). Other courts of appeals have been "persuaded that § 2254(b)(3) applies with full force in cases . . . where the procedural bar arises only as a direct result of the petitioner's failure to exhaust his state law remedies." McNair v. Cambell, 416 F.3d 1291, 1305 (11th Cir. 2005); see also Ellis v. Hargett, 302 F.3d 1182, 1189 (10th Cir. 2002); Franklin v. Johnson, 290 F.3d 1223, 1238 (9th Cir. 2002) (O'Scannlain, J., concurring). We are persuaded that when a state's procedural default argument is predicated on a habeas applicant's failure to exhaust (as is the case here), we may consider such an argument for the first time on

21

appeal unless it was *expressly* waived in the district court. See Franklin, 290 F.3d at 1238.  This is a stringent requirement.  Waiver by nature must be knowing and intentional; express waiver would seem to require that these features be made manifest.

The prosecution's brief before the district court seems to make an erroneous concession regarding exhaustion.  D. Ct. Doc. No. 10 at 28.  But it then goes on to argue--in a section of its brief entitled: "If this Court Were to Overlook the Procedural Bar, Petitioner's Claims Present No Basis for Habeas Relief"--that Carvajal's claim does not present a basis for habeas relief because "[a]lleged errors of state substantive law are not reviewable in a federal habeas proceeding."  D. Ct. Doc. No. 10 at 47-48.

Pre-AEDPA, we reasoned:

> [E]ven if the government's erroneous concession regarding exhaustion can be taken as a concession regarding procedural default, we believe that where such a concession constitutes merely an innocent error, there is no analytical or policy reason to treat it any differently than a failure to raise the defense at all.

Washington, 996 F.2d at 1448.  That analysis applies with incremental force post-AEDPA: circumstances may be considered in deciding whether waiver is sufficiently

22

categorical.  See Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) (stating that the "nature of the state's alleged 'waiver' should be given consideration" in assessing whether "sua sponte reliance upon a procedural default" is appropriate).  As other courts have observed, "AEDPA does not explain how a state 'expressly waives' the exhaustion requirement, but . . . '[w]aiver' is traditionally defined as an 'intentional relinquishment or abandonment of a known right."  D'Ambrosio v. Bagley, 527 F.3d 489, 495 (6th Cir. 2008).  We join the reasoning of at least one other sister court of appeals in requiring a "stringent standard for proving waiver of exhaustion" because such a standard is "squarely in line with the underlying purposes of the exhaustion requirement."  Dreher v. Pinchak, 61 F. App'x 800, 803 (3d Cir. 2003) (unpublished opinion).  Indeed, "[p]rinciples of comity and federalism bear on the relations between court systems, and those relations will be affected whether or not the litigants have raised the issue themselves."  Washington, 996 F.2d at 1448; see also Acosta v. Artuz, 221 F.3d 117, 121 (2d Cir. 2000).

In light of the equivocal wording in the prosecution's brief before the district court, and recognizing that "AEDPA

23

disfavors a state waiver of exhaustion," Lurie, 228 F.3d at 123, we decline to read the prosecution's concession as waiver *express* within the meaning of 28 U.S.C. § 2254(b)(3). See id., 228 F.3d at 123 ("Whatever counsel was saying, we do not read it as an 'express' waiver of the exhaustion requirement."); see also Carty v. Thaler, 583 F.3d 244, 256 (5th Cir. 2009) ("The touchstone for determining whether a waiver is express is the clarity of the intent to waive." (internal quotation marks omitted)).  True, the prosecution did not press the procedural default defense before the district court; nevertheless, the prosecution is not "estopped from reliance upon the requirement" before this Court.  28 U.S.C. § 2254(b)(3).

**III**

The state courts evidently understood Carvajal's jurisdictional argument as a challenge to the State's statutory jurisdiction under New York Criminal Procedure Law section 20.20.  Applying the Daye factors, we conclude that no *federal* claim was fairly presented to the state courts.[6]

---

[6] Respondent urges this Court to decline to reach the merits of Carvajal's federal constitutional claim for a different reason.  The prosecution contends that our review is barred because the decision of the state court rests on an adequate and independent state ground.  Recognizing that

24

Carvajal's challenge was consistently expressed as an argument that the New York courts erred in construing the pertinent *state* jurisdictional statutes. He pointed to no federal constitutional provision that might alert the state courts that his claim was federal in nature. Rather, he relied on state court decisions interpreting state statutory law. Carvajal did not invoke "pertinent federal cases

the "adequacy [of a state law ground of decision] is itself a federal question," Lee v. Kemna, 534 U.S. 362, 375 (2002), the Supreme Court has "applied the independent and adequate state ground doctrine . . . in deciding whether federal . . . . courts should address the claims of state prisoners in habeas corpus actions," Coleman v. Thompson, 501 U.S. 722, 729 (1991). This doctrine applies when a state prisoner *presents* both federal and state claims to the state court and the state court declines to address the federal claims because it is possible to rest its decision "on a state law ground that is independent of the federal question and adequate to support the judgment." Id. Under those circumstances, when the state court "clearly and expressly" relies on a state law ground in rendering its decision, we will not grant a writ of habeas corpus. Id. at 735. The adequate and independent state grounds doctrine, however, has no application here. The adequate and independent state law grounds doctrine "assumes that a state court had the opportunity to address a claim that is later raised in a federal habeas proceeding. It is simply inapplicable in a case such as this one, where the claim was never presented to the state courts." Teague v. Lane, 489 U.S. 288, 299 (1989). Perhaps not surprisingly, the conflation of an adequate and independent state law ground of decision and a procedural default based on a habeas applicant's failure to raise a federal issue before the state courts appears to also have caused confusion in the district court. Carvajal, 2009 WL 62177, at *2.

25

employing constitutional analysis," nor did he seek support for his contention from "state cases employing constitutional analysis in like fact situations." Daye, 696 F.2d at 194. Of course, it is hard to fault Carvajal for failing to point to a "like fact situation[]." As the Appellate Division recognized, this was an unusual use of Criminal Procedure Law section 20.20. Carvajal, 786 N.Y.S.2d at 454. However, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. [S]tate courts are the ultimate expositors of state law." Mannix v. Phillips, 619 F.3d 187, 199 (2d Cir. 2010) (internal quotation marks and citation omitted); see also Tunick v. Safir, 209 F.3d 67, 76 (2d Cir. 2000) ("Th[e] question of the extent to which the state court can go when interpreting its own laws is paradigmatically one of state law[.]" (internal quotation marks omitted)). Even if this Court views the state court's interpretation of its state statute as unwise, or even as jurisdictional overreaching, this does not entitle Carvajal to habeas relief. See Swarthout v. Cooke, No. 10-333, 562 U.S. ---, 2011 WL 197627, at *2 (Jan. 24, 2011) (per curiam).

The New York Court of Appeals ruled that the question whether New York had jurisdiction to prosecute Carvajal could not be waived. Carvajal, 6 N.Y.3d at 312. We do not understand this conclusion as a ruling on federal law. Read in context, the New York Court of Appeals was evidently opining on a matter of state law; put simply, the New York court ruled--as a matter of state law--that the power of a state court to act is not an issue that can be waived even if a defendant waives the right to require the prosecution to prove the jurisdictional element to a jury beyond a reasonable doubt. Id. at 311-12. It is within the province of the New York Court of Appeals to construe the jurisdictional statute passed by the New York State legislature. See People v. Kassebaum, 95 N.Y.2d 611, 617-18 (2001). The New York Court of Appeals has made plain that it understands the statutory jurisdictional provision to have "supplanted" the "common-law territorial principle" and to have "broaden[ed] the territorial scope of criminal jurisdiction." Id. at 617; see also People v. Stokes, 88 N.Y.2d 618, 624 (1996) (stating "[t]he starting point for the [s]tate's jurisdiction in criminal cases is of course the territorial principle derived from the common law," but

27

that "[t]his principle has been supplanted by [s]tate statutes broadening the territorial principle of criminal jurisdiction").  Whether we agree with New York's interpretation and application of its state jurisdictional statute is neither here nor there;[7] our disagreement would not in any event entitle Carvajal to relief.

The Supreme Court "doubt[s] that a defendant's citation to a state-court decision predicated solely on state law ordinarily will be sufficient to fairly apprise a reviewing court of a potential federal claim." Anderson v. Harless, 459 U.S. 4, 7 n.3 (1982) (per curiam).  In light of that guidance, in recognition of "our dual judicial system," and

---

[7] There is very little state case law interpreting New York Criminal Procedure Law section 20.20(1)(c).  Prior to the New York Court of Appeals' decision in this case, at least one state trial court declined to give an expansive reading to the jurisdictional provision:

> The People would read [New York Criminal Procedure Law section 20.20(1)(c)] as subjecting substantive crimes committed out of state to New York prosecution merely because they allegedly occurred in furtherance of a New York conspiracy.  The court does not agree.

People v. Puig, 378 N.Y.S.2d 925, 932 (Sup. Ct. N.Y. Co. 1976).  The New York Court of Appeals, however, read section 20.20(1)(c) in precisely the manner the state trial court in Puig eschewed:  "Plainly, jurisdiction over an offense exists based on a conspiracy occurring in New York to commit that offense." Carvajal, 6 N.Y.3d at 313.

28

out of "concern for harmonious relations between the two adjudicatory institutions," we cannot find that Carvajal properly presented his federal claim to the state courts in a manner that would allow this Court to grant relief. Daye, 696 F.2d at 191; see also DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006); Galdamez v. Keane, 394 F.3d 68, 72-73 (2d Cir. 2005).

**IV**

The failure of Carvajal's counsel to press his jurisdictional objection in federal constitutional terms "does not constitute cause for a procedural default."[8] Murray v. Carrier, 477 U.S. 478, 486 (1986). And, Carvajal has not argued that he is "actually innocent" (meaning factually innocent) of the crime for which he was convicted.[9] Bousley v. United States, 523 U.S. 614, 622,

---

[8] The question of whether Carvajal's counsel was ineffective in failing to hold the prosecution to its burden of proving jurisdiction beyond a reasonable doubt is not before us.

[9] "[W]here a constitutional violation has probably resulted in the conviction of one who is *actually innocent*, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Smith v. Murray, 477 U.S. 527, 537 (1986) (internal quotation marks omitted and emphasis added). Actual innocence means "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623

623 (1998).  Accordingly, we must dismiss Carvajal's application for habeas relief.  Aparicio, 269 F.3d at 89-90.

**V**

Carvajal's appeal relies heavily on the dissenting opinion of Judge Bundy Smith, which took the view that New York law permits criminal prosecution for a drug possession offense only when the criminal conduct--or some consequence of the conduct--occurred within the state.  Carvajal, 6 N.Y.3d at 322-30 (G.B. Smith, J., dissenting).  This

---

(1998).  Any assertion by Carvajal that he was "actually innocent" would necessarily be limited to the idea that he was innocent of drug possession *in New York*:  If he had been prosecuted for drug possession in California, there is little doubt he could properly have been convicted.

The Supreme Court has provided no guidance on whether a meritorious claim that the state court lacked jurisdiction to prosecute would constitute a claim of "actual innocence" for purposes of seeking habeas relief.  If Judge Bundy Smith is right that "no New York court could [have] acquired jurisdiction over the three counts of criminal possession because no such crime occurred in New York," Carvajal, 6 N.Y.3d at 328 (G.B. Smith, J., dissenting), Carvajal's jurisdictional claim might be a sufficient basis from which he could have argued that he is "actually innocent" and entitled to habeas relief.  It may be that conviction in New York for conduct that is not a crime against that sovereign would fall within the "narrow scope" of the "miscarriage of justice exception" as defined by the Supreme Court. Calderon v. Thompson, 523 U.S. 538, 559 (1998).  But, because Carvajal does not press an "actual innocence" argument before this Court, we decline to resolve these open and vexing questions and instead rest our decision on the grounds presented to us.

30

argument has substantial appeal.  Indeed, Carvajal's conviction in New York for a crime committed wholly in another state seems anomalous to us, as it did to Judge Bundy Smith.  However, we have no occasion to decide whether there was error in the state court's statutory interpretation because "[i]t is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States."  Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).  "[I]t is only noncompliance with *federal* law that renders a [s]tate's criminal judgment susceptible to collateral attack in the federal courts."  Wilson v. Corcoran, 131 S. Ct. 13, 2010 WL 4394137, at *2 (Nov. 8, 2010) (per curiam).

Judge Bundy Smith's dissent is in major part directed to New York law.  It does appear that the Court of Appeals' ruling in this case may have been a pivot.  Compare McLaughlin, 80 N.Y.2d at 471 (providing "[t]he general rule in New York is that, for the [s]tate to have criminal jurisdiction, *either the alleged conduct or some consequence of it* must have occurred within the [s]tate" (emphasis

31

added)), and Kassebaum, 95 N.Y.2d at 619 (characterizing the jurisdictional inquiry as "whether the People established that defendant and his accomplices engaged in conduct *within New York* sufficient to establish an element of attempted criminal possession of a controlled substance"), with Carvajal, 6 N.Y.3d at 313 (finding jurisdiction over *possession* offense because "there was evidence of defendant's conduct in New York sufficient to establish his *conspiracy* to commit first degree criminal possession of a controlled substance" (emphasis added)).

In 1925, then-Judge Cardozo concluded that when a plan to commit larceny was hatched in New York, but the "execution was in other lands," New York lacked jurisdiction to prosecute a participant in that conspiracy for larceny committed abroad. People v. Werblow, 241 N.Y. 55, 58-61 (1925). At the same time, Werblow made it clear that the court's construction of the statute was not a "consequence of some inherent limitation upon the power of the Legislature." Id. As a matter of state statutory interpretation, the Werblow Court concluded that the jurisdictional statute was not intended to provide for "an

32

extension of jurisdiction until now unknown to our law."[10]
Id. But even if the decision of the New York Court of Appeals were deemed contrary to, or an unreasonable application of, prior *state* precedent, this would not aid Carvajal's position before this Court. "[W]e do not defer to [the New York Court of Appeals'] interpretation of *federal* law, but we are bound by its construction of *New York* law." Portalatin v. Graham, 624 F.3d 69, 84 (2d Cir. 2010) (in banc).

Judge Bundy Smith's dissent also states that Carvajal's conviction for criminal possession of a controlled substance was obtained in violation of the federal Constitution. It argues that New York's exercise of jurisdiction over the possession counts was a violation of Article III, § 2 and the Sixth Amendment. Carvajal, 6 N.Y.3d at 321-22 (G.B. Smith, J., dissenting). However, the Supreme Court has made it clear that Article III and the Sixth Amendment are

---

[10] One commentator has observed that New York "could not validly make it a crime for its citizens to 'play the slot machines' in Las Vegas, Nevada, where this is lawful. Such a statute would violate the full faith and credit clause." Rollin M. Perkins, The Territorial Principle in Criminal Law, 22 Hastings L.J. 1155, 1164 (1970-71); see also U.S. Const. art. IV, § 1. We are not, however, faced with such a case.

33

understood as venue provisions. United States v. Cabrales, 524 U.S. 1, 6 (1998); Williams v. Florida, 399 U.S. 78, 93 n.35 (1970). Venue, unlike jurisdiction proper, is subject to waiver. See, e.g., United States v. Calderon, 243 F.3d 587, 590 (2d Cir. 2001); People v. Moore, 46 N.Y.2d 1, 10 (1978). Moreover, it appears that "the Supreme Court has not decided whether the Sixth Amendment's vicinage clause applies to the states." Stevenson v. Lewis, 384 F.3d 1069, 1072 (9th Cir. 2004); see also People v. Goldswer, 39 N.Y.2d 656, 662 (1976) (stating "[i]n Federal prosecutions undoubtedly 'district' means the Federal judicial districts established by Congress" but, "[i]t is not entirely clear what this means in [s]tate prosecutions, or whether in fact it imposes any obligations on the [s]tate to create or designate subdivisions limiting venue and vicinage within the [s]tate."). One thing is clear: Carvajal never challenged his prosecution for criminal possession of a controlled substance on the ground that it was in violation of his federal constitutional right to proper venue.

On appeal, Carvajal also invokes Strassheim (identified by the magistrate judge as the relevant Supreme Court precedent), which holds that a state may punish "[a]cts done

34

outside a jurisdiction, but intended to produce *and producing* detrimental effects within it." 221 U.S. at 285 (emphasis added). But it is not evident that this passage from Strassheim is prescriptive, and that actual effects are required to support jurisdiction. So even if Carvajal had relied on Strassheim before the state courts--which he did not--we are not convinced that he would be entitled to relief from this Court. As the Supreme Court of California has observed, "the constitutional limits of state courts' extraterritorial jurisdiction in criminal matters have not been precisely delineated, [but] it is clear that states may extend their jurisdiction beyond the narrow limits imposed by the common law." People v. Betts, 103 P.3d 883, 887 (Cal. 2005), cert. denied, 545 U.S. 1133 (2005). In fact, New York has upheld the exercise of extraterritorial jurisdiction in scenarios that do not fall within the Strassheim test, and no one has suggested that doing so was a violation of the federal Constitution. For example, New York recognizes a theory of "protective" jurisdiction, pursuant to which "the jurisdiction of the [s]tate, or one of its counties, may be exercised over conduct outside its geographical borders where such conduct was intended to have

a deleterious effect within its territory."[11]  People v. Fea, 47 N.Y.2d 70, 76 (1979).

Ultimately, even if Carvajal had fairly presented to the state courts a federal constitutional challenge to New York's exercise of jurisdiction, and the state courts had rejected that claim on its merits, it is not clear that we would be empowered to grant relief.  See Miller-El v. Cockrell, 537 U.S. 322, 326 (2003) (stating "AEDPA constrains a federal court's power to disturb state-court convictions").  We cannot grant relief "with respect to any claim that was adjudicated on the merits in [s]tate court proceedings" unless the adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

[11] Other states have done likewise.  See, e.g., Betts, 103 P.3d at 887 (upholding jurisdiction over crime committed in another state when intent to commit crime formed in prosecuting state); see also Connecticut v. Cardwell, 718 A.2d 954, 963 (Conn. 1998) (observing "that the legislature has the authority to enact criminal statutes that have an extraterritorial effect"); but cf. State v. Dudley, 614 S.E.2d 623, 626 (S.C. 2005); People v. Blume, 505 N.W.2d 843, 844 (Mich. 1993) (holding "Michigan may exercise extraterritorial jurisdiction over acts committed outside Michigan when the acts are intended to *and do* have a detrimental effect within the state." (emphasis added)).

36

States."[12]  28 U.S.C. § 2254(d)(1).

The Supreme Court has not had occasion to say how far a state may go in expanding its criminal jurisdiction.  We therefore cannot say that the state court's interpretation of New York Criminal Procedure Law section 20.20, however surprising, was in conflict with "governing law set forth" by the Supreme Court.[13]  Williams v. Taylor, 529 U.S. 362, 405 (2000).

**CONCLUSION**

We conclude that Carvajal failed to present his jurisdictional objection to the state courts in federal constitutional terms and that he cannot escape the consequences of his failure to exhaust that claim and the

---

[12] On the other hand, if Carvajal *had* fairly presented his federal constitutional claim to the state courts but those courts had *not* adjudicated his contention on its merits, we would review his jurisdictional challenge de novo.  See Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007). Under those circumstances, we might agree with Judge Bundy Smith that New York's exercise of jurisdiction was in violation of the Constitution.

[13] The New York Court of Appeals did not cite Strassheim or any territorial jurisdictional principle grounded in the federal Constitution; it would be improper therefore to rule that the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle." Williams v. Taylor, 529 U.S. 362, 413 (2000).

resulting procedural default.  Any disagreement this Court may have with the state high court's interpretation of its state jurisdictional statute does not provide grounds for habeas relief.  Accordingly, Carvajal's application for a writ of habeas corpus is DISMISSED.